# Wytheville.

## ASHWORTH & OTHERS V. TRAMWELL.

### JUNE 16, 1904.

1. ESTOPPEL—*Prejudice.*—No estoppel arises from the language or con-
duct of a part, unless another person has been misled thereby to
his prejudice.

2. EQUITY PLEADING—*Issues—Settlement Before Commissioner.*—No
supplemental answer or cross-bill is necessary to raise issues in a
cause which, under existing pleadings and decrees, can be settled
and reported upon by a master commissioner under a proper order
of reference.

3. SET-OFFS—*When Available—Set-Offs Against Decedent's Estate.*—In
order for a set-off to be available as· a defence, it must be in such
a condition and of such a character as that the court can appro-
priate it to the demand. In a suit by an executor the defendant
cannot claim as a set-off demands against the testator acquired
since his death. It cannot be told in advance of a settlement of
his estate, what proportion of his debts his estate will pay, and
the executor's suit will not be delayed to ascertain that fact.

4. EQUITY—*Creditor's Bill—Parties—Set-Offs.*—Where a set-off is
claimed against a lien proved by an executor, under an order for
account in a lien creditor's suit, the estate of the deceased creditor
cannot be settled in that suit, nor will the suit be delayed to await
such settlement elsewhere.

5. EQUITY—*Final Decree—Leave to Reopen in Given Time.*—A decree
which disposes of all matters in controversy in a cause and leaves
nothing to be done is a final decree, although, as a matter of grace,
a defendant is allowed thirty days thereafter within which to file
an upset bid. If the bid is filed the case will be reopened, and the
decree will become inoperative; but, if not filed within the time
appointed, the decree is final, and speaks from the date of its ren-
dition.

6. Costs—*Interest.*—A judgment or decree for costs, as a general rule, does not bear interest. Costs are considered in some sense as damages.

7. EQUITY—*Decree to Sell Land—Day to Redeem—Suspension of Decree.*—A decree in a creditor's suit, which directs the sale of land, but fails to give the defendant a day in which to pay the sums decreed against him, will not be set aside for that reason, where the decree has been suspended for sixty days at the instance of the defendant, in order to enable him to apply for an appeal to this court. He has had a day in which he could have paid, if he desired, although it was not specially designated for that purpose.

Appeal from a decree of the Corporation Court of the city of Bristol, in a suit in chancery, wherein the appellee, Tramwell, was the complainant, and the appellants and others were the defendants.

*Amended and affirmed.*

As stated in the opinion, this is the sequel to *Tramwell* v. *Ashworth,* 99 Va. 646. When the case was remanded to the Corporation Court to ascertain the liens upon certain real estate, a lien was claimed for the balance of purchase price on the property mentioned in the bill. This debt was evidenced by a note for $700, given by Mrs. M. J. Ashworth to Rives Walker. Walker was indebted to William H. Tramwell, and, to secure this indebtedness, he transferred the Ashworth note as collateral security. The commissioner states that there were, in fact, two assignments of this note—one when the $350 note was given by Walker to Tramwell as collateral security, the other just before suit was brought by Tramwell, absolute, and that at the time of the latter assignment Tramwell, by his attorney, executed a writing, certifying that after paying the $350 note, the balance of the $700 note was to be paid by him to Walker. The effect of the latter transaction was simply to make an assignment absolute on its face, but, in fact, as security for the money which Walker owed to Tramwell. While the case was

pending in the Court of Appeals on the original appeal a compromise agreement was entered into between Tramwell, of the one part, and Mrs. Ashworth and M. E. Hendrick, of the other, by which it was agreed that the latter parties should pay Tramwell $390, and Tramwell assigned, without recourse, his recovery, and all his rights in said suit against Rives Walker, including his lien upon said land, to M. J. Ashworth. The commissioner, after reviewing the evidence, finds that this assignment carried nothing but Tramwell's rights against Walker, which were to have paid the original debt which Walker owed him of $350, and that the residue of the $700 note, which was a vendor's lien on the property, remained the property of Rives Walker. It is not claimed that Mrs. Ashworth has paid the residue of this note to any one, or that she changed her position to her detriment in any way in consequence of the assignment. The evidence tends to show, and the commissioner finds, that Mrs. Ashworth compromised with Tramwell for his half of the note, but no part of Walker's half was paid or settled in any way.

It is further claimed by Mrs. Ashworth that no decree could be made in favor of Walker or Walker's administratrix, because there was no pleading putting in issue the fact of any indebtedness to him, but it appears that after the case was remanded by this Court to the Corporation Court, Rives Walker offered to file an amended and supplemental bill and cross-bill putting in issue the fact of the indebtedness to him on account of the balance of the $700 note, but the Corporation Court declined to allow it to be filed, upon the ground that all the rights of Walker could be asserted before the commissioner, and the question settled without further pleading.

After Walker's death, Mrs. Ashworth purchased certain judgments against him, which she asked to have set off against the lien asserted by him. As Walker had died, and there had been no settlement of his estate, it was impossible to tell what amount should be paid on this judgment. Mrs. Ashworth could

only be entitled to her *pro rata* share of the assets, and as this has not been determined and the court could not know what it was, it refused to delay the hearing until Walker's estate was settled, in order to ascertain the value of the offset, and, consequently, it was disallowed.

As Tramwell appeared on the record to be the absolute assignee of the entire $700 note at the time the compromise agreement was entered into, Mrs. Ashworth insisted that Walker's administratrix was estopped to assert a claim to any part of the note, but it was not shown that she had been prejudiced in any way by the character of the assignment, and hence this defence was not allowed.

Mrs. Ashworth also complained, because all the costs of the case in the Court of Appeals had been taxed against her in favor of Walker's administratrix. When the original suit was brought it was for the enforcement of the vendor's lien. To this suit Walker was a party. Mrs. Ashworth filed her answer and cross-bill in that suit, and asked to have the sale, which was sought to be enforced in the bill, set aside and rescinded, and to charge the land with the lien in her favor for the amount of purchase money she had paid. So that the real litigation was upon the issue made by this cross-bill. Her contention on the cross-bill was not sustained, and hence the court was of opinion that as the real fight was upon the question made by her, she ought to pay the costs.

The other facts sufficiently appear in the opinion of the court.

*A. H. Blanchard,* for the appellant.

*Peters & Lavinder, A. B. Whitaker* and *H. W. Sutherland,* for the appellee.

KEITH, P., delivered the opinion of the court.

This is the sequel to the case of *Tramwell* v. *Ashworth, et als.,*

which was decided by this court in June, 1901, and is reported in 99 Va., p. 646, 39 S. E. 593. The cause was remanded to the Corporation Court of the city of Bristol to ascertain the liens upon certain real estate, and to its decree upon that subject this appeal was allowed.

The first error assigned is to the lien reported in favor of the administratrix of Rives Walker for the sum of $316.00. This debt had its origin in a note given for the purchase of property by Mrs. M. J. Ashworth to Rives Walker, who assigned one-half of it to William H. Tramwell, to pay a debt due him of $350.00. There was an arrangement between Tramwell and M. J. Ashworth, the debtor, with respect to one-half of this note, but there is no evidence that the balance due Walker, after the payment of his note to Tramwell had ever been paid by any one, and the commissioner was fully justified in finding it to be a valid and subsisting obligation.

The circumstances relied upon by M. J. Ashworth as creating an estoppel with respect to the collection of that half of this demand which was not actually paid by her is wholly without merit, as she has been in no degree misled to her prejudice.

Nor is there any merit in the contention that there is no pleading by Walker, or his administratrix, upon which relief can be given them with respect to this debt. Rives Walker offered to file an amended and supplemental answer and cross bill, but the court very properly declined to allow him to do so, because under the pleadings and decrees in the cause as it stood, all the rights of Walker or his administratrix could be settled and reported upon by the commissioner.

Nor is there any merit in the contention of M. J. Ashworth with respect to the imposition of costs. She was the losing party, and was properly required to pay the cost of the litigation.

It is assigned as error that certain judgments against Rives Walker, which had been assigned to M. J. Ashworth, were not

allowed her as set-offs against the judgment in favor of Rives
Walker reported in this cause.

When a party relies upon this plea the set-off must be in
such a condition and of such a character as that the court may
appropriate it to the demand. Now, when these judgments were
assigned, Rives Walker was dead, and his estate had passed into
the hands of his administratrix. His creditors were only en-
titled to be paid upon a settlement of the estate, and that could
not be done in this suit. Nor would it be reasonable or just
to delay the parties to this litigation, to await the termination
of an independent suit brought for the administration of Rives
Walker's estate, and for the ascertainment of the amount which
his creditors, upon a settlement, would be entitled to recover
against his administratrix. The idea of having such a settle-
ment in this suit cannot for a moment be entertained. The in-
convenience and delay would be intolerable.

In *Robinett's Admr. v. Mitchell and others,* 101 Va. 762,
45 S. E. 287, it was held that where a creditor comes in under an
order for an account of debts against a decedent's estate, and
proves a debt upon which a third person is jointly bound with
the decedent, such third person is not a necessary party to the
suit, as no relief is there sought against him, and it is not the
practice of the courts, nor is it the policy of the law, to encumber
suits for the administration of assets of decedents' estates with
collateral issues affecting the adjustment of equities between
persons having no privity with many of the other creditors. In
that case the court refused to require a joint debtor to be made
a party, because of the delay and inconvenience which would
result from that practice.

In *Wytheville Crystal Ice, &c. Co. v. Frick Co.,* 96 Va. 141,
30 S. E. 491, quoted with approval in the case just cited, it is
said: "If these persons were made defendants any liens on
their lands would have to be ascertained, which, upon the same
principle, would compel the making of any other persons parties

defendants who were defendants to judgments constituting liens on their lands, thereby adding new parties from time to time without end, at the expense and delay of the creditor, and to the great prejudice of his rights."

These decisions are cited as being in some degree analogous to the case under consideration, and as illustrating the inconvenience, delay and injustice which would inevitably result if this court were to require the parties to wait for a settlement of the estate of Rives Walker, in order to furnish appellant the proof of set-off. There was no error in refusing to permit the judgments against Rives Walker's estate to be set-off against the demand in this cause made by his administratrix.

Among the debts reported is one in favor of the National Mutual Building & Loan Association for $372.31, with interest from May 10, 1898. It appears there was a bill pending in the Circuit Court of Washington county, brought by the Building & Loan Association against M. J. Ashworth to enforce the lien of a deed of trust. The property covered by this deed was sold, and the proceeds applied to the payment of the debt secured, leaving a balance over and above due by M. J. Ashworth of $372.31. The Circuit Court of Washington county confirmed the sale to the trust creditor, decreed that the cash payment should be paid to the prior lienors, and after providing for costs credited the balance of the purchase price on the debt of the purchaser, and gave a decree against M. J. Ashworth for the residue, appointed a commissioner to convey the land to the purchaser, and directed a writ of possession to issue, with the privilege extended to M. J. Ashworth to file an upset bid within thirty days. That decree was final. It disposed of all matters in controversy and left nothing to be decided by the court. As a matter of grace to M. J. Ashworth, it gave her thirty days within which to file an upset bid. Had she availed herself of that privilege, the case would have been reopened and the decree would have been inoperative, but this she did not do, and

the decree against her speaks from the date of its rendition on the 10th of May, 1898. It therefore has priority over the judgment in the name of Kendrick against Ashworth, which was rendered on the 10th day of June, 1898.

Among the judgments reported is one in favor of the National Mutual Building & Loan Association against M. J. Ashworth for $210.91, with interest from July 18, 1895. The exception with respect to this judgment is to the allowance of interest upon it. The principal of the judgment is for the costs adjudged against M. J. Ashworth in this court, and we are of opinion that it was error to allow interest upon it.

Said Judge Roane in *McRea* v. *Brown,* 2 Munf. 46: "The general principle is that costs are considered as an appendage to the judgment, rather than a part of the judgment itself; that they are considered, in some sense, as damages, and are always entered, in effect, as an increase of damages by the court. This doctrine is to be found in 3 Blackstone's Com., 399. I presume it was on the ground of this general principle that this court reversed the judgment in the case of *Hudson* v. *Johnson,* which gave damages on the costs; for as costs are in the nature of damages, and damages and interest are considered, in some sense, as the same, it might seem that the judgment gave, in effect, interest upon interest, or compound interest, which has been always highly discountenanced by the courts and the Legislature."

In *Baum* v. *Reed,* 74 Penna. St. Rep. 322, Justice Agnew, of the Supreme Court of Pennsylvania, said: "It is certainly the settled general rule in this State that costs do not bear interest. The best evidence of this is the universal practice of endorsing executions. On the *fi. fa.* or other writ the debt is stated, followed by the date from which interest is to be computed, and then come the costs without date of interest. Such is the mode of endorsement, no matter how many years have elapsed from the entry of the judgment. Even after a revival

of the judgment, the same practice is pursued, the first costs being marked as on the original, and the second as on the *scire facias.*"

There are cases in which interest will be allowed upon costs. An instance of this kind will be found in *Chapman* v. *Fletcher*, 95 Va. 585, 29 S. E. 325, but under the circumstances of this case we are of opinion that interest should not have been computed.

The decree appealed from does not, in terms, give the defendant a day in which to pay the sums decreed against her, but directs the property to be sold. At the instance of the defendants, however, the operation of this decree was suspended for sixty days to allow them time to present a petition for an appeal. Doubtless if they had asked for a suspension in order that they might have opportunity to raise the money and pay the debts, it would have been gladly afforded the defendants, and would have obviated the necessity for the suspension granted them in order to make application to this court. The court might well have thought that having suspended the operation of the decree for sixty days, it was unnecessary to say that the defendant might, within the sixty days, pay the debt. The effect was the same. The decree during the time of its suspension remained a dead letter, and whether given in the one form or the other gave to the defendant the same benefit and afforded her the same opportunity to satisfy the demands of her creditors, and to obviate the necessity for a sale. To reverse the decree upon this ground would indeed be to stick in the bark.

As we have discovered no error in the decree appealed from except with respect to the allowance of interest upon the judgment for costs, we shall amend it in that respect, and, it appearing that the appellees have substantially prevailed in this court, the decree will be affirmed, with costs.

*Amended and affirmed.*