In re **CHILTON**, and three other cases.
Nos. 8074, 8621, 8617, 8668.

District Court, D. Colorado.
July 24, 1936.

See, also, 8 F.Supp. 778; 8 F.Supp. 961.

J. Emery Chilton, of Denver, Colo., for James William Chilton, debtor.

James R. Hoffman, of Denver, Colo., for John R. Walker, creditor.

William E. Hutton, John F. Pierce, and J. P. Nordlund, all of Denver, Colo., for Central States Life Ins. Co.

David W. Sarvas, of Brighton, Colo., for Sam Schenfeld, debtor.

Emory L. O'Connell and Wm. H. Robinson, Jr., both of Denver, Colo., for Sam Johns, creditor.

William R. Kelly, of Greeley, Colo., for E. K. Plumb, creditor.

Glenn S. Thompson, of Yuma, Colo., for Arnold Flury, debtor.

Webb D. Martin, of Yuma, Colo., and Noah A. Atler and Samuel Chutkow, both of Denver, Colo., for J. F. Heiserman & Son, creditor.

Walter L. Grutter, of Wray, Colo., for Ira Rowley, debtor.

SYMES, District Judge.

In the course of administration of the above estates the constitutionality of the so-called amended Frazier-Lemke Act (Bankr.Act § 75(s), as amended by Act Aug. 28, 1935, § 6, 11 U.S.C.A. § 203(s) was raised. The cases were argued and submitted together and briefs filed.

The question in the Flury Case, No. 8617, is on a motion by a secured creditor, J. F. Heiserman & Son, to set aside the order confirming the report of the conciliation commissioner and to dismiss the proceedings. The petitioners have an obligation against the debtor in the amount of $7,000, secured by a deed of trust on real estate and chattel mortgage on the cattle.

In the Schenfeld Case the debtor is indebted to Sam Johns in the sum of $3,000, secured by chattel mortgage on the livestock and farm machinery. After the debtor's composition agreement had been rejected and he had requested that he be adjudicated a bankrupt under section 75(s), a stay order was issued. The matter is before the court on the creditor's petition that he be allowed to foreclose his chattel mortgage.

In No. 8668, Ira Rowley, a secured creditor holding a chattel mortgage on livestock and farm implements, asks permission to foreclose. The petition is for a restraining order against the party and others proceeding in the state court.

In the matter of James William Chilton, No. 8074, the debtor acquired a large ranch July 14, 1933. The ranch was subject to a first mortgage, then and ever since held by the Central States Life Insurance Company, but the debtor did not assume or become personally liable to the mortgagee. After the decision in the Radford Case (Louisville Joint Stock Land Bank v. Radford), 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, holding subsection (s), § 75 (48 Stat. 1289) of the original act unconstitutional, a restraining order theretofore issued by this court was vacated, and the insurance company authorized to apply for a receiver in the state court, which appointed a receiver for the property. The debtor asks for a restraining order against the proceedings in the state court.

On May 27, 1935, the Supreme Court in Louisville Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, held the so-called Frazier-Lemke Act (chapter 869, 48 Stat. 1289), unconstitutional. The amended act became a law August 28, 1935, so our inquiry is: Does the amendment cure the defects found by the Supreme Court?

Various and diverse questions, constantly arising under the new act, have required numerous decisions by appellate and district courts as to its constitutionality. A tabulation of these cases fails to show a preponderance one way or the other sufficient to establish a rule of decision until the Supreme Court again speaks. So reluctantly and very briefly I submit my views.

According to the Radford Case, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, supra, the original act was unconstitutional because it deprived the secured creditor of the right: (1) To retain his liens until the indebtedness secured is paid; (2) to realize on the security by

judicial public sale; (3) to determine when such sale shall be had, subject only to the discretion of the court; (4) to protect its interest in the property by bidding at such sale whenever held to assure having the mortgaged property devoted to satisfaction of the debt; (5) to control the property, subject only to the discretion of the court.

Admittedly the first objection cannot be made to the present act.

(2) The amendment, subsection (s), § 75, of the act, authorizes a stay for a maximum period of three years, during which time the debtor may remain in possession. But as pointed out in Dallas Joint Stock Land Bank v. Davis (C.C.A.) 83 F. (2d) 322, this stay is not absolute, is subject at all times to the judicial discretion of the court, and until the contrary is shown it may be assumed that in the exercise of this discretion the court will not deprive the creditor of any substantial rights. Furthermore, subsection (s), § 75, as amended, contains the following: "Provided, That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest."

This requires a sale at public auction, and the debtor, desiring to redeem, must pay not any appraised value, but the amount the property brings at public sale with interest, and it follows that the creditor may protect his interest by bidding at such a sale. It is argued that this language does not vest in the creditor the absolute right to a sale, and that he must wait until the end of the three-year period referred to. There is merit in this argument, supported, as it is, by many of the decided cases.

It may also be contended with equal force that this vests in the secured creditor the right to an immediate sale, and the right to abrogate the three-year moratorium. In construing a statutory provision susceptible of more than one construction, we adopt the one consonant with its constitutionality.

Furthermore, this amendment was drawn by the judiciary committees of the House and Senate to cure the constitutional infirmities of the original act. They had the Radford Case before them, and

if reasonably possible, the lower federal courts assume they did so.

It cannot be doubted that Congress has the power to transfer to the federal court exclusive jurisdiction of the debtor's affairs and stay sales and other proceedings in the state courts, provided the power of sale is preserved to the creditor. In the absence of a specific demand for sale in accordance with subsection (s), § 75, supra, we do not resolve the question in advance.

The act makes it discretionary with the court whether the debtor shall retain possession of any of his property and his possession is always subject to its control. The rent required of him is determined by rental value, not income and earning capacity of the property, and may include an additional sum to be applied on the principal of the debt. Also, the amendment specifically provides that all existing mortgages, liens, encumbrances, etc., shall remain in full force and effect, and that the property covered thereby shall be subject to the claims of the secured creditors as their interests may appear. The federal courts have exercised without question comparable supervisory powers over res in its possession for many years under equity receiverships.

It would seem that the decided cases do not give sufficient weight to Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry., 294 U.S. 648, 55 S. Ct. 595, 79 L.Ed. 1110. That case involved bankruptcy proceedings under section 77, Bankr.Act, 11 U.S.C.A. § 205, but the opinion discusses generally the bankruptcy clause of the Federal Constitution and specifically refused to define the limits thereof, the nature and extent of which it says are to be fixed by the gradual process of historical inclusion and exclusion; that it is adaptable to new conditions, and that its interpretation has been progressively liberal. Furthermore, that the interests of the creditors are not necessarily paramount and that one of the primary purposes of bankruptcy was to (294 U.S. 648, at page 670, 55 S.Ct. 595, 604, 79 L.Ed. 1110) " 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes,' and to give him 'a new opportunity in life and a clear field for future effort, unhampered by the pressure

and discouragement of pre-existing debt,'" and that although the extensions of bankruptcy power by legislation have been fundamental and radically progressive, they are nevertheless all within the power conferred by the bankruptcy clause and "demonstrate in a very striking way the capacity of the bankruptcy clause to meet new conditions," etc. And finally, that an act designed to adjust a failing debtor's obligations without the intervention of actual bankruptcy is nevertheless a law on the subject of bankruptcy. Were this not so, section 77 and section 77B (as amended, 11 U.S.C.A. §§ 205, 207) would be unconstitutional.

The "Exemption of farmer and property from proceedings for enforcement of claims," section 75 (*o*), Bankr.Act, 11 U.S.C.A. § 203 (*o*) are not absolute, and the creditor has a right to be heard thereon. The filing of a petition in bankruptcy has always acted as a temporary stay of proceedings in the state courts, and it may be assumed the court will not allow the debtor to enjoy the benefits of this provision (which is temporary only), except upon a showing that this and other provisions of the act will encompass his rehabilitation and not be used merely for the purpose of delaying and defrauding his creditors. "Good faith" is a condition precedent to the enjoyment of most, if not all, of the benefits of section 75 (as amended [11 U.S.C.A. § 203]).

The act is replete with detailed procedural provisions difficult of classification. As Justice Brandeis points out in the Radford Case, supra, the Supreme Court has from time to time sustained many similar provisions when they preserve substantially the right of mortgagees to obtain through application of the security, payment of the indebtedness, as in Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, and has stricken down those found to substantially abridge this right, and that the Rock Island Case, supra, held that the power granted to enjoin temporarily the sale of pledged securities to be unobjectionable, though it suspends temporarily the enforcement of the lien through sale of the collateral, during which period of restraint the collateral might well decline in value.

■ It has been argued with great earnestness and ability that a lienholder, in the absence of personal liability on the part of the bankrupt, is not subject to section 75. Subdivision (n), § 75, as amended by Act Aug. 28, 1935, § 4, 11 U.S.C.A. § 203 (n), subjects "the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property," etc. That is to say, the court is given jurisdiction in personam over the debtor, and in rem equity jurisdiction directly over his property. The present act retains the provisions permitting the debtor to buy his own property at an appraised, as distinguished from its market, value. This of itself raises a serious constitutional question.

■ Assertions of unconstitutionality of acts of Congress can only be considered when some direct injury has been suffered, or there is a showing of immediate danger of injury as a result of its enforcement. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078. Accordingly, we will not anticipate, but defer until the proper time many interesting questions discussed in the briefs.

■ We conclude the amended act is constitutional as far as any questions the court is now called upon to decide.

In the *Chilton* Case:

No. 8074.

The new act reinstated old cases. It follows that the state court should relinquish jurisdiction. The petition for a restraining order should be granted. Before the order is entered, however, it is suggested that application be made to the state court to discharge the receiver and relinquish possession.

In Nos. 8621, 8617, and 8668, the question is, on the facts of each particular case: Is there a reasonable prospect that the debtor within the stay period of three years can be rehabilitated? The three cases are referred to the proper conciliation commissioners with instructions to forthwith hold hearings on notice, receive proof from the creditor and other parties, and report the facts as to the value of the security, and whether or not it is likely to enhance or depreciate in value in the near future, and whether there is a reasonable prospect that the debtor can be rehabilitated.