## WRIGHT v. VINTON BRANCH OF THE MOUNTAIN TRUST BANK OF ROANOKE ET AL.

No. 530. Argued March 3, 4, 1937.—Decided March 29, 1937.

*Messrs. S. S. Lambeth, Jr., Elmer McClain,* and *William Lemke* for petitioner.

446

448

450

*Mr. John Strickler, pro hac vice,* by special leave of Court, and *Mr. T. X. Parsons,* with whom *Messrs. S. V. Kemp* and *John F. Reinhardt* were on the brief, for respondents.

452

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The question for decision is whether § 75, subsection (s), of the Bankruptcy Act, as amended by the new

Frazier-Lemke Act, August 28, 1935, c. 792, 49 Stat. 943–945, is constitutional. In this case, the federal court for western Virginia (see *In re Sherman,* 12 F. Supp. 297) and the Circuit Court of Appeals for the Fourth Circuit (85 F. (2d) 973) held it invalid. Like decisions have been rendered in other circuits. *Lafayette Life Insurance Co.* v. *Lowmon,* 79 F. (2d) 887 (Seventh Circuit); *United States National Bank of Omaha* v. *Pamp,* 83 F. (2d) 493 (Eighth Circuit). In the Fifth Circuit the legislation was sustained. *Dallas Joint Stock Land Bank* v. *Davis,* 83 F. (2d) 322. Because of this conflict and the importance of the question, we granted certiorari.[1]

Wright, a Virginia farmer, gave in 1929 a mortgage deed of trust of his farm to secure a debt now held by the Vinton Branch of the Mountain Trust Bank. In March, 1935, he filed a petition under § 75 of the Bankruptcy Act as amended June 28, 1934, c. 869, 48 Stat. 1289.

---

[1] See also *Steverson* v. *Clark,* 86 F. (2d) 330, and *Knotts* v. *First Carolinas Joint Stock Land Bank, id.,* 551 (Fourth Circuit), applying the decision in the instant case; *McWilliams* v. *Blackard, id.,* 328, and *Phoenix Joint Stock Land Bank* v. *Ledwidge, id.,* 355 (Eighth Circuit), applying the decision in *United States National Bank of Omaha* v. *Pamp, supra;* and *Schauer* v. *Producers Wool & Mohair Co., id.,* 576 (Fifth Circuit), applying the decision in *Dallas Joint Stock Land Bank* v. *Davis, supra.* The cases in the district courts are also conflicting. The legislation was sustained in *In re Slaughter,* 12 F. Supp. 206 (N. D. Tex.); *In re Reichert,* 13 *id.,* 1 (W. D. Ky.); *In re Cole, id.,* 283 (S. D. Ohio); *In re Bennett, id.,* 353 (W. D. Mo.); and *In re Chilton,* 16 *id.* 14 (D. Colo.). Compare *In re Paul,* 13 *id.* 645 (S. D. Iowa); *In re Slaughter, id.,* 893 (N. D. Tex.). It was held invalid in *In re Young,* 12 F. Supp. 30 (S. D. Ill.); *In re Lindsay, id.,* 625 (N. D. Iowa); *In re Weise, id.,* 871 (W. D. N. Y.); *In re Davis,* 13 *id.* 221 (E. D. N. Y.); *In re Diller, id.,* 249 (S. D. Cal.); *In re Tschoepe, id.,* 371 (S. D. Tex.); *In re Schoenleber, id.,* 375 (D. Neb.); *In re Wogstad,* 14 *id.* 72 (D. Wyo.); and *In re Maynard,* 15 *id.* 809 (D. Idaho). Compare *In re Shonkwiler,* 17 F. Supp. 697, 699 (E. D. Ill.).

When the proceedings were begun, the debt secured by the deed of trust had matured and was in default, and the trustee, at the request of the beneficiary, had advertised the property for sale pursuant to the terms of the deed of trust and the provisions of the Virginia Code. The debtor's petition prayed, among other things, "that all proceedings against him by way of pending and advertised foreclosures of his farming lands, or by other methods contrary to the provisions" of the Act be stayed. The petition, "appearing to be in proper form and to have been filed in good faith," was referred to the Conciliation Commissioner as required by § 75. On July 27, 1935, the debtor made a proposal for composition; but it was not accepted by the mortgage creditor. On October 8, 1935, Wright filed an amended petition under subsection (s) of § 75 as amended by the new Frazier-Lemke Act; and asked to be adjudged a bankrupt and to have all the benefits of the provisions of said subsection (s) as so amended and approved August 28, 1935.

An order was entered adjudging Wright a bankrupt and again referring the matter to the Conciliation Commissioner. Thereafter, the Vinton Branch of the Mountain Trust Bank moved in the District Court that the proceedings before the Commissioner be terminated and "that this case be dismissed upon the ground that Subsection (s) of said Act is unconstitutional in that it deprives said creditor of its property without due process of law and that the debtor is not entitled to pursue the remedies and privileges granted therein." On January 8, 1936, that motion was granted; all proceedings on the bankrupt's petition were terminated; and his petition was dismissed. It is that order, affirmed by the Court of Appeals, which is here for review. Both of the lower courts held that, since the applicable rights of a mortgagee in Kentucky and of the beneficiary under a mortgage deed of trust in

Virginia are substantially the same, our decision in *Louisville Joint Stock Land Bank* v. *Radford,* 295 U. S. 555, required that subsection (s) be held unconstitutional.

*First.* The mortgagee claims that the legislation is void on its face. It challenges the power of Congress to confer upon courts authority to grant to a mortgagor, under any circumstances, any of the relief provided for in subsection (s) of the new Frazier-Lemke Act. There has been no order granting a stay under Paragraph 2 of subsection (s). But the motion is not premature; for the fact that no stay order has been entered does not imply that an actual constitutional controversy is not presented. The petitioner asserts a right to pursue proceedings provided by a federal statute, and that right has been denied him on grounds of the alleged invalidity of the statute. Before the motion to dismiss was made, the district court had entered its order adjudging petitioner a bankrupt, and referring the matter to the conciliation commissioner for further proceedings under § 75 (s). The entry of the order of reference initiated proceedings designed to move, through the appointment of appraisers, the appraisal, and the referee's order recognizing the debtor's right to possession, to the grant of the stay by the court. Under the Act no further affirmative action by petitioner precedent to his obtaining the stay was necessary. The mortgagee was not obliged to delay his challenge to the validity of the stay and its essential incidents until these officials had complied with the mandatory provisions of the Act. But while we must decide whether the challenged subsection is constitutional, we refrain from deciding questions suggested which may arise later in the course of its administration.

*Second.* The decision in the *Radford* case did not question the power of Congress to offer to distressed farmers the aid of a means of rehabilitation under the bankruptcy clause. The original Frazier-Lemke Act was there held invalid solely on the ground that the bankruptcy power of

Congress, like its other great powers, is subject to the Fifth Amendment; and that, as applied to mortgages given before its enactment, the statute violated that Amendment, since it effected a substantial impairment of the mortgagee's security. The opinion enumerates five important substantive rights in specific property which had been taken. It was not held that the deprivation of any one of these rights would have rendered the Act invalid, but that the effect of the statute in its entirety was to deprive the mortgagee of his property without due process of law. The rights enumerated were (pp. 594–595):

"1. The right to retain the lien until the indebtedness thereby secured is paid.

"2. The right to realize upon the security by a judicial public sale.

"3. The right to determine when such sale shall be held, subject only to the discretion of the court.

"4. The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

"5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt."

In drafting the new Frazier-Lemke Act, its framers sought to preserve to the mortgagee all of these rights so far as essential to the enjoyment of his security. The measure received careful consideration before the committees of the House and the Senate. Amendments were made there with a view to ensuring the constitutionality of the legislation recommended. The Congress concluded, after full discussion, that the bill, as enacted, was free from the objectionable features which had been held fatal to the original Act.

458

*Third.* It is not denied that the new Act adequately preserves three of the five above enumerated rights of a mortgagee. "The right to retain the lien until the indebtedness thereby secured is paid" is specifically covered by the provisions in Paragraph 1, that the debtor's possession, "under the supervision and control of the court," shall be "subject to all existing mortgages, liens, pledges, or encumbrances," and that:

"All such existing mortgages, liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such mortgages, liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors, as their interests may appear." [2]

"The right to realize upon the security by a judicial public sale" is covered by the provision in Paragraph 3 that at the termination of the stay:

---

[2] Amendments to the bill subsequent to its introduction plainly demonstrate careful intention to leave the lien wholly unimpaired. As introduced, the measure provided for retention of the lien 'up to the actual value of such property, as fixed by the appraisals provided for in this section,' S. 3002, § 6, p. 6 (Compare Act of June 28, 1934, c. 869, Subsec. (s), (2), 48 Stat. 1290); and there was no provision for a public sale at the request of the secured creditor. As reported out of the Senate Committee on the Judiciary, and as subsequently enacted, the measure provided for retention of the lien unqualified by reference to the appraisal value of the property. See S. 3002, as reported, § 6, p. 6; Sen. Rep. No. 985, 74th Cong., 1st Sess., p. 3. As reported by the committee, the bill provided for a public sale in the discretion of the court, upon request of the secured creditor, and limited the lienholder's bid at such sale to 'the appraised value or the original principal, whichever is the higher.' S. 3002, *supra,* § 6, p. 9; Sen. Rep. No. 985, *supra,* pp. 4, 6. Since the latter qualification was thought to raise some constitutional doubt, it was eliminated during the Senate's consideration of the measure. See statements of Senators Ashurst and Borah, of the Committee on the Judiciary, and of Senator Frazier, 79 Cong. Rec. 13413, 13633, 13634, 13641. The House Committee on the Judiciary reported the bill with this change. H. R. Rep. No. 1808, 74th Cong., 1st Sess., pp. 1, 4, 6.

". . . upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction." [3]

The new Act does not in terms provide for "The right to protect its [the mortgagee's] interest in the property by bidding at such sale whenever held . . ." But the committee reports and the explanations given in Congress make it plain that the mortgagee was intended to have this right. [4] We accept this view of the statute.

[3] As introduced, S. 3002 contained the provision of the Act by which the mortgagor might purchase at the appraised value, subject to the mortgagee's right to require a re-appraisal; but it did not provide that the mortgagee might, in lieu of a re-appraisal, have a public sale. The bill as reported by the Senate Committee on the Judiciary inserted after the provision for appraisal a clause providing, "That upon request in writing by any secured creditor or creditors, the court, in its discretion, if it deems it for the best interests of the secured creditors and debtor, may order the property upon which such secured creditors have a lien, to be sold at public auction; . . ." S. 3002, as reported, § 6, p. 9; see Sen. Rep. No. 985, 74th Cong., 1st Sess., p. 4. "To remove a question as to the constitutionality of the bill," this provision was altered in the course of the bill's passage through the House to deprive the court of discretion in the matter and to give the secured creditor an unqualified right to a public sale as the alternative to a transfer of the property to the debtor at the re-appraised value. See remarks of Representative Sumners, of the House Committee on the Judiciary, 79 Cong. Rec. 14332–33.

[4] As reported by the Senate Committee on the Judiciary, S. 3002, § 6, p. 9, recognized a right in the mortgagee to bid at the sale not in excess "of the appraised value or the original principal, whichever is the higher." See Sen. Rep. No. 985, 74th Cong., 1st Sess., pp. 4, 6. In striking out this qualification for the express purpose of avoiding a constitutional doubt, Senators responsible for the measure plainly showed that they had no intention of raising a further constitutional controversy by questioning the mortgagee's unqualified right to bid. See statements of Senators Ashurst, Borah, and Frazier, 79 Cong. Rec. 13413, 13633, 13634, 13641–42. · H. R. Rep. No. 1808, 74th Cong., 1st Sess., pp. 1, 5–6, unequivocally declared that under the Act

*Fourth.* The claim that sub-section (s) is unconstitutional rests mainly upon the contention that the Act denies to a mortgagee the "right to determine when such sale shall be held, subject only to the discretion of the court." The assertion is that the new Act in effect gives to the mortgagor the absolute right to a · three-year stay; and that a three-year moratorium cannot be justified. The three-year stay is specified in the following provisions:

"When the conditions set forth in this section [§ 75] have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years." (Par. 2.) ·

"At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal." (Par. 3.)[5]

Whether, in view of the emergency, an absolute stay of three years would have been justified under the bankruptcy power, we have no occasion to decide. There are

---

the secured creditors have the right to bid at the sale; and this was made clear on the floor of the House by Representative Sumners, of the Committee on the Judiciary. See 79 Cong. Rec. 14333.

The beneficiary under a mortgage deed of trust in Virginia is permitted to bid in the property at the sale. See, *e. g., Ashworth* v. *Tramwell,* 102 Va. 852, 858, 47 S. E. 1011; *Title Insurance Co.* v. *Industrial Bank,* 156 Va. 322, 327, 157 S. E. 710; *Everette* v. *Woodward,* 162 Va. 419, 174 S. E. 864. Compare *Easton* v. *German-American Bank,* 127 U. S. 532, 538.

[5] This clause is qualified by alternative provisos, one for payment at a reappraised value, the other for a public sale to be held upon the mortgagee's request at the time when the stay expires, whether by lapse of time or by the mortgagor's payment into court of the appraised or reappraised value. See Note 3, *supra.*

other provisions in the statute affecting the mortgagor's right to possession. Their phraseology is lacking in clarity. But we are of opinion that, while the Act affords the debtor, ordinarily, a three-year period of rehabilitation, the stay provided for is not an absolute one; and that the court may terminate the stay and order a sale earlier. If we were in doubt as to the intention of Congress, we should still be led to that construction by a well settled rule: "When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell* v. *Benson*, 285 U. S. 22, 62.

The mortgagor's right to retain possession during the stay is specifically limited by paragraph 3, which provides:

"If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act."

Thus, for example, the debtor's tenure under the stay is subject to the requirement that he pay "a reasonable rental semiannually for that part of the property of which he retains possession." Under the last-quoted provision of Paragraph 3, if the debtor defaults in this obligation "at any time," the court may thereupon order the property sold. Likewise, the property while in the debtor's possesssion is kept, according to Paragraph 2, at all times "in the custody and under the supervision and control of the court"; and, also under Paragraph 2:

"The court, in its discretion, if it deems it necessary to protect the creditors from loss by the estate, and/or to

conserve the security, . . . may, in addition to the rental, require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, in accordance with the provisions of this Act, and may require such payments to be made quarterly, semiannually, or annually, not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation."

Paragraph 3 authorizes the court to have the property sold if "at any time" the debtor should fail to comply with orders of the court issued under its power to require interim payments on principal, or otherwise in the course of its "supervision and control" of his possession. Paragraph 3 also provides that "if . . . the debtor at any time . . . is unable to refinance himself within three years," the court may close the proceedings by selling the property. This clause must be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period.[6] Finally, the intention of Congress to make the

---

[6] This construction is in harmony with the requirement of good faith in the initiation of proceedings under § 75. Relief under § 75 (s) may be obtained only by one who has made a bona fide attempt, and has failed, to effect a composition under § 75, (a)-(r). The offer of composition must be in good faith, [§ 75, (c), (i), 47 Stat. 1471, 1472], and if the debtor is beyond all reasonable hope of financial rehabilitation, and the proceedings under § 75 cannot be expected to have any effect beyond postponing inevitable liquidation, the proceedings will be halted at the outset. The practical administration of § 75 in the lower courts already affords ample evidence of the substantial protection afforded the creditor by this requirement of good faith in the initiation of proceedings under subsections (a)-(r). See *In re Borgelt*, 79 F. (2d) 929; *Dallas Joint Stock Land Bank* v. *Davis*, 83 *id.* 322, 323; *Stevenson* v. *Clark*, 86 *id.* 330;

stay terminable by the court within the three years is shown also by Paragraph 6, which declares the act an emergency measure, and provides that:

"if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate." [7]

Since the language of the Act is not free from doubt in the particulars mentioned, we are justified in seeking enlightenment from reports of Congressional committees and explanations given on the floor of the Senate and House by those in charge of the measure.[8] When the leg-

---

*Knotts* v. *First Carolinas Joint Stock Land Bank, id.* 551; *In re Reichert,* 13 F. Supp. 1, 4, 5; *In re Paul, id.,* 645, 647; *In re Buxton's Estate,* 14 *id.* 616; *In re Vater, id.,* 631; *In re Schaeffer, id.,* 807; *In re Duvall, id.,* 799; *In re Byrd,* 15 *id.* 453; *In re Wylie,* 16 *id.* 193, 194; *In re Price, id.,* 836, 837. Compare *In re Chilton,* 16 F. Supp. 14, 17; *In re Davis, id.,* 960. It must be assumed that the situation of the present debtor was not beyond all reasonable hope of rehabilitation, else he could not have qualified to file his petition at the outset. Compare *Tennessee Publishing Co.* v. *American National Bank,* 299 U. S. 18, 22.

[7] This provision is not inconsistent with the constitutional requirement that laws established by Congress on the subject of bankruptcies shall be uniform throughout the United States. Art. 1, § 8, cl. 4. The problem dealt with may present significant variations in different parts of the country. By Paragraph 6 the Bankruptcy Act adjusts its operation to these variations, as under other provisions it has adjusted its operation to the differing laws of the several States affecting dower, exemptions, and other property rights. Compare *Hanover National Bank* v. *Moyses,* 186 U. S. 181, 189; *Stellwagen* v. *Clum,* 245 U. S. 605, 613. The authority granted by Paragraph 6 does not exceed limits of authority familiarly exercised by courts. See *Standard Oil Co.* v. *United States,* 221 U. S. 1, 69; compare *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543.

[8] Where the meaning of legislation is doubtful or obscure, resort may be had in its interpretation to reports of Congressional committees which have considered the measure, (*McLean* v. *United*

464

islative history of the bill is thus surveyed, it becomes clear that to construe the Act otherwise than as giving the courts broad power to curtail the stay for the protection of the mortgagee would be inconsistent not only with provisions of the Act, but with the committee reports and with the exposition of the bill made in both Houses by its authors and those in charge of the bill and accepted by the Congress without dissent.[9]  We construe it as giving the courts such power.

*States*, 226 U. S. 374, 380; *Tagg Bros. & Moorhead* v. *United States*, 280 U. S. 420, 435); to exposition of the bill on the floor of Congress by those in charge of or sponsoring the legislation, (*Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443, 475; *Richbourg Motor Co.* v. *United States*, 281 U. S. 528, 536); to comparison of successive drafts or amendments of the measure, (*United States* v. *Pfitsch*, 256 U. S. 547, 551; *United States* v. *Great Northern Ry. Co.*, 287 U. S. 144, 155); and to the debates in general in order to show common agreement on purpose as distinguished from interpretation of particular phraseology, (*Federal Trade Comm'n* v. *Raladam Co.*, 283 U. S. 643, 650; *Humphrey's Executor* v. *United States*, 295 U. S. 602, 625).

[9] Emphasis upon the deliberate intention to meet the constitutional objections raised in *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555, dominated the consideration of the bill in all stages. See *e. g.*, Sen. Rep. No. 985, 74th Cong., 1st Sess., pp. 1, 3; H. R. Rep. No. 1808, *id.*, pp. 1, 3; statements of Senator McCarran, 79 Cong. Rec. 11971; Senator Ashurst, *ibid.;* Senator Borah, *id.*, 13411, 13632, 13642; Representative Lemke, *id.*, 14331, 14332; and Representative Sumners, *id.*, 14333.  There was no dissent on constitutional grounds apart from the doubts which were disposed of as described in notes 2, 3, and 4, *supra*.  Comparing the present measure with the former § 75 (s), Sen. Rep. No. 985, 74th Cong., 1st Sess., p. 5, pointed out that "the amended subsection (s) shortens the time of the stay of proceedings from 5 to 3 years, and .·. . gives the court power to shorten that stay.  It gives the court complete jurisdiction and custody of the property, with authority to fix the rental annually, and to sell perishable property and personal property that is not necessary for the debtor's farming operations.  It will also be noticed that the court can require payments over and above the rental value.  In other words, in the amended subsection (s),

*Fifth.* It is urged that subsection (s) is unconstitutional because there is taken from the mortgagee "the right to control meanwhile the property during the period of default, subject only to the discretion of the court,

the property is virtually in the complete custody and control of the court, for all purposes of liquidation. . . ." Likewise, it was said in H. R. Rep. No. 1808, 74th Cong., 1st Sess., p. 5, that "The new subsection (s) shortens the time of the stay of proceedings from 5 to 3 years, and in addition gives the court power to shorten that period. . . . Under the new subsection (s) the property of the bankrupt is in the complete custody and control of the court, for all the purposes of liquidation." And at p. 6: "The Supreme Court intimated that in the original subsection, the district court did not have sufficient discretion. In this subsection, the district court is given complete control and discretion."

Discussion of the bill in the Senate is reported in 79 Cong. Rec. 11970–71, 13348–49, 13411–13, 13632–45.

In the Senate discussion there occurred the following (79 Cong. Rec. 13633):

"Mr. BORAH. The court is given power in the bill to make sale of the property whenever the court deems it in the interest of all parties to do so.

"Mr. HASTINGS. During the 3 years?

"Mr. BORAH. Yes. In the case of perishable property, or property which is not bringing in any income, or anything of that kind, the court has power to make sale of it.

.            .            .            .            .

"Mr. FRAZIER. The bill gives the court authority to sell the property, if it deems it advisable, at any time. The court may sell any part of it. or all of it at any time before or during or after the 3 years."

Discussion of the bill in the House is reported in 79 Cong. Rec. 13831, 14331–34. Presenting the bill, as reported from committee, Representative Lloyd explained: "We have in no way reduced the security of the mortgagee. We have left his security intact, but we have made it possible for the bankruptcy court to retain jurisdiction for a period not to exceed 3 years." 79 Cong. Rec. 13831.

There also occurred in the House the following (79 Cong. Rec. 14332):

"Mr. FORD of California. Is it not designed to give to the farmer a breathing spell so that he may orient himself in such a way as to

and to have the rents and profits collected by a receiver for the satisfaction of the debt."

(a) The argument is that possession by the mortgagor during the stay is necessarily less favorable to the mortgagee than possession by a receiver or trustee would be. This is not true. The mortgagor is in default, but it is not therefore to be assumed that he is a wrongdoer, or incompetent to conduct farming operations. The legislation is designed to aid victims of the general economic depression. The mortgagor is familiar with the property, and presumably vitally interested in preserving ownership thereof and ready to exert himself to the uttermost to that end. It is not unreasonable to assume that, under these circumstances, the interests of all concerned will be better served by leaving him in possession than by installing a disinterested receiver or trustee. For the mortgagor holds possession charged with obligations imposed for the benefit of the mortgagee as fully as if the property were in the possession of a receiver or trustee, and there is probably a saving of expense. In order to protect the creditor's interests, the possession is at all times subject to the supervision and control of the court; and, if the debtor, "at any time," fails to comply with orders of the

get out of his present difficulties without in the least jeopardizing the lien of his creditors?

"Mr. LEMKE. Absolutely, and the district judge has complete control all the time of the farmer's property.

. . . . .

"Mr. ANDRESEN. All it does is to give a 3-year extension for the time of the redemption if the court so directs.

"Mr. LEMKE. Under the supervision and control of the court."

Despite some apparent similarity of language, the remarks quoted from the discussion in the Senate do not seem to have been addressed to the second proviso of paragraph 3 as it then stood, but to have been intended more generally, expressing the plan embodied in the last sentence of paragraph 3. See S. 3002, as reported from committee, § 6, p. 9,

court issued in the exercise of its supervisory power to protect the mortgagee against waste or other abuse of his possession by the mortgagor, the court may order the property sold. The farmer's proceeding in bankruptcy for rehabilitation, resembles that of a corporation for reorganization. As to the latter it is expressly provided that the debtor may, to some extent, be left in possession, U. S. Code, Title 11, § 207 (c); and it is common practice to appoint as receivers one of the officials of the corporation.

(b) It is complained that the mortgagor is not required to pay the first instalment of rent until the end of one year. The phraseology of the applicable provision is not clear. Paragraph 2 provides:

"During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semiannually for that part of the property of which he retains possession. The first payment of such rental shall be made within one year of the date of the order staying proceedings, the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property."

The clause providing that "the first payment of such rental shall be made within one year" is obviously capable of either of two constructions. One, that the mortgagor may not be required by the court to pay before the close of the year. The other, that the court may not postpone the payment beyond one year. In view of the requirement of semi-annual rental, the latter seems to us more reasonable. We intimate no opinion as to the validity of this provision under the first construction. As here construed, the clause cannot be deemed arbitrary or unreasonable.

(c) The disposition of the rental required to be made is said to involve denial of the mortgagee's rights. Paragraph 2 provides:

"Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear."

It is suggested that payment of taxes and keeping the property in repair takes the income from the mortgagee, and that the mortgagor alone may be benefited thereby; that if the mortgagor exercises the option to purchase the property at its appraised value, he will secure the property free of tax liens which otherwise might have accrued against it. But it must be assumed that the mortgagor will not get the property for less than its actual value. The Act provides that upon the creditor's request the property must be reappraised, or sold at public auction; and the mortgagee may by bidding at such sale fully protect his interest. Non-payment of taxes may imperil the title. Payments for upkeep are essential to the preservation of the property. These payments prescribed by the Act are in accordance with the common practice in foreclosure proceedings where the property is in the hands of receivers.[10]

*Sixth.* In support of the contention that the legislation is unconstitutional, it is pointed out that the delay in the enforcement of the mortgage under § 75 of the Bankruptcy Act as amended by sub-section (s) may exceed the term of three years; that months may be consumed in

---

[10] See *Shepherd* v. *Pepper*, 133 U. S. 626, 652; *Thompson* v. *Phenix Insurance Co.*, 136 U. S. 287, 293; *Cake* v. *Mohun*, 164 U. S. 311, 316; 1 Clark, Law and Practice of Receivers (2d ed. 1929) § 670; High, Law of Receivers (4th ed. 1910) § 643; 1 Wiltsie, Mortgage Foreclosure (4th ed. 1927) § 616. Compare *Atlantic Trust Co.* v. *Chapman*, 208 U. S. 360, 371.

the effort to obtain a composition or extension of the debtor's obligations with the consent of the creditors; that when a petition is filed praying for the relief outlined in subsection (s) a further period of months may be consumed in having the property appraised and putting the debtor in the position which he must occupy before the stay is granted; that "four months from the date that the referee approves the appraisal" is given within which "either party may file objections, exceptions, and take appeals" from the appraisal; and that upon a sale of the property under Paragraph 3:

"The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court . . ."

It is pointed out, also, that the mortgage here in question is in the form of a deed of trust.[11] It is claimed that the rights to enforce payment by sale of the mortgage property, conferred by the law of Virginia upon the creditor under such a deed, are more peremptory than those under the law of Kentucky discussed in the *Radford* case.[12] And it is urged that the limitations here placed upon the enforcement of the mortgage are not merely a modification of the remedy recognized as permissible. Compare *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 434.

---

[11] See *Franklin Plant Farm* v. *Nash,* 118 Va. 98, 111, 86 S. E. 836, 840; *Dillard* v. *Serpell,* 138 Va. 694, 697, 123 S. E. 343; 3 Jones, Law of Mortgages (8th ed. rev. 1928) §§ 1742, 2276.

[12] See Code of Va., 1918 (Michie 1924) § 5167, as amended, Acts, 1926, c. 324, subsecs. (1)–(6), (13); *In re Sherman,* 12 F. Supp. 297, 298–299; compare *Hogan* v. *Duke,* 20 Gratt. 244, 256, 259; *Muller's Administrator* v. *Stone,* 84 Va. 834, 837, 6 S. E. 223; *Hudson* v. *Barham,* 101 Va. 63, 67, 68, 43 S. E. 189. See also *Ashworth* v. *Tramwell,* 102 Va. 852, 858, 47 S. E. 1011; *Peterson* v. *Haynes,* 145 Va. 653, 661, 134 S. E. 675; *Neff's Administrator* v. *Newman,* 150 Va. 203, 210, 142 S. E. 389.

But the question here involved is not one of state action under the police power alleged to violate the contract clause. The power here exerted by Congress is the broad power "To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." The question which the objections raise is not whether the Act does more than modify remedial rights. It is whether the legislation modifies the secured creditor's rights, remedial or substantive, to such an extent as to deny the due process of law guaranteed by the Fifth Amendment. A court of bankruptcy may affect the interests of lien holders in many ways. To carry out the purposes of the Bankruptcy Act, it may direct that all liens upon property forming part of a bankrupt's estate be marshalled; or that the property be sold free of encumbrances and the rights of all lien holders be transferred to the proceeds of the sale. *Van Huffel* v. *Harkelrode,* 284 U. S. 225, 227. Despite the peremptory terms of a pledge, it may enjoin sale of the collateral, if it finds that the sale would hinder or delay preparation or consummation of a plan of reorganization. *Continental Illinois National Bank & Trust Co.* v. *Chicago, R. I. & P. Ry. Co.,* 294 U. S. 648, 680–681. It may enjoin like action by a mortgagee which would defeat the purpose of subsection (s) to effect rehabilitation of the farmer mortgagor. For the reasons stated, we are of opinion that the provisions of subsection (s) make no unreasonable modification of the mortgagee's rights; and hence are valid.

*Reversed.*