John C. CARPENTER, Jr., as a board member and Individually, et al., Plaintiffs,

v.

Rogers C. B. MORTON, as Secretary of the United States Department of the Interior, and Individually, et al., Defendants.

Civ. No. R–75–1 BRT.

United States District Court, D. Nevada.

June 14, 1976.

---

**604**

Vaughan, Hull, Marfisi & Miller, Elko, Nev., Tried by John C. Miller, Elko, Nev., for plaintiffs.

Lawrence J. Semenza, U. S. Atty., Reno, Nev., Tried by Samuel Coon, Asst. U. S. Atty., Reno, Nev., and James R. Arnold, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

BRUCE R. THOMPSON, District Judge.

This case was tried to the Court on stipulated facts and memoranda of law. This opinion shall constitute the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure. The key issue to be decided is whether the Secretary of the Interior is obligated to recharter the advisory boards created by the Taylor Grazing Act and terminated by Section 14 of the Federal Advisory Committee Act (FACA). It appears that this is a case of first impression.

By a 1939 amendment to the Taylor Grazing Act (43 U.S.C. § 315, et seq.), Congress established boards of grazing district advisors in the several districts (Section 315o–1). All plaintiffs were members of such a board until January 1975.

Defendant Thomas S. Kleppe is the Secretary of the United States Department of the Interior. The remaining defendants are employees, managers, officers or directors of the Bureau of Land Management (BLM).

Pursuant to the Taylor Grazing Act, the Department of the Interior promulgated a regulation relating to the appointment, term of office and removal of members of grazing district boards. 43 CFR § 4114.1–3. The regulation was in effect at all times in 1974 and 1975. Specifically, the regulation provided that the State Director of the Bureau of Land Management could, in his discretion, appoint board members in certain classifications to a term of office of three hundred sixty-five days and could renew those appointments upon expiration. The length of the renewal term would depend on the classification of the board member.

In 1972, Congress enacted the Federal Advisory Committee Act, Public Law 92–463; 86 Stat. 770; 5 U.S.C. § 1, et seq., App. I. The effective date of the Act was January 5, 1973 (§ 15). The purpose of the Act, as it relates to this controversy, is to provide a means by which advisory committees [1] which had been established by Congress, the President and various agencies could be reviewed so that those no longer furthering the purpose for which they were established could be terminated (§ 2).

Section 14(a)(1) of the Act provides that each advisory committee existing at the

---

1. An advisory committee is described as "any committee, board * * * or other similar group * * * which is * * * established by statute * * *." Section 3(2).

time of the effective date of the Act shall terminate within two years unless, among other things, the advisory committee is one established by an act of Congress and for which Congress has provided a longer duration period. Section 14(b)(1) contemplates that an advisory committee which had been terminated may be renewed.

Plaintiffs argue that the advisory boards established by the Taylor Grazing Act are exempt from any effect of the FACA. The crux of plaintiffs' argument is that the FACA could not have *abolished* the advisory boards established by the Taylor Grazing Act because to do so would necessarily involve an implied repeal of the Taylor Grazing Act and implied repeals are not favored. See *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

Plaintiffs further argue that the FACA merely *terminated* all advisory committees so that various governmental authorities could reassess the need for advisory boards under their respective jurisdictions. Plaintiffs conclude that in this case the Taylor Grazing Act itself implicitly requires that grazing district advisory boards be reinstated and that there is no need to reassess the situation.

Section 14 of the Act uses the word "terminate" in describing the effect of the Act on existing advisory committees. Other sections of the Act, in different contexts (§§ 5, 6 and 7, for example), use the word "abolish." Plaintiffs argue that if Congress had intended that the operative provision of Section 14 would cause the existing advisory committees to cease to exist, it would have used the word "abolish" rather than the word "terminate."

While plaintiffs' argument has a superficial appeal, it is not persuasive. Section 14(b)(1) provides for the possible renewal of an advisory committee terminated by the Act. The use of the word "terminate" in Section 14(a)(1) is entirely consistent with the renewal provision of Section 14(b)(1); the use of the word "abolish" would not be consistent with the provision.

Section 5 of the Act provides that "each standing committee of the Senate and the House of Representatives shall make a continuing review of the activities of each advisory committee under its jurisdiction to determine whether such advisory committee should be abolished." Section 6 of the Act provides that the President shall (beginning with the year after the effective date of the Act) make an annual report including the names of the advisory committees established by Congress which he recommends should be abolished. Section 7 of the Act provides that the Director of the Office of Management and Budget shall (immediately after October 6, 1972) institute a comprehensive review of the activities and responsibilities of each advisory committee to determine "whether it should be abolished."

Defendants argue that Sections 5, 6 and 7 are primarily applicable to those advisory committees established after the effective date of the Act (i. e., to those advisory committees to which Section 14 would not apply). Defendants' argument is logical and persuasive. Unquestionably, the FACA was intended to have both immediate effect through (§ 14) and prospective effect through §§ 5, 6 and 7. Since the procedures of §§ 5, 6 and 7 contemplate a studied decision with respect to the question of whether a particular advisory committee is necessary, Congress could use a term denoting finality; thus the use of the word "abolish." Since the procedure of Section 14 is automatic and, further, since it contemplates the possible renewal of a previously disbanded advisory committee, Congress used the word "terminate."

The case of *Wright v. Vinton Branch*, 300 U.S. 440, 463–64, n. 8, 57 S.Ct. 556, 81 L.Ed. 736 (1937), holds that it is appropriate to refer to reports to determine Congressional intent.

Congressman D. B. Faschell, one of the managers of the bill on the part of the House, said:

"One of the major purposes of the bill is to establish congressional control over the proliferation of committees * * *. If the Congress creates an advisory committee by statute, we shall continue to

have a right to repeal or create. The only way we touch a committee or affect a committee in this bill, and that applies to all of them, is they terminate at the end of two years, unless appropriate action is taken to continue them * * *. If it is Congress, we must reauthorize. Now, we do that so that we can get some kind of control with respect to the creation and indefinite continuation of these committees." (118 Cong.Rec. 16305 (1972)).[2]

Senator Charles Percy, one of the managers of the bill on the part of the Senate, said:

"Another key provision is that all advisory committees will terminate unless specific action is taken by the creating authority to continue them." 118 Cong. Rec. 30274 (1972).[3]

█ Thus, we think it is clear that when Congress enacted the FACA, it was concerned about the proliferation of advisory committees which had outlived their usefulness. To remedy this situation, Congress chose to terminate all advisory committees. In doing that, Congress contemplated that the Act would affect existing substantive law and that if it later decided the advisory committees were necessary, Congress would enact legislation to recharter them. The Secretary of the Interior had no obligation or authority to recharter the advisory boards of which plaintiffs were members. Accordingly,

*IT HEREBY IS ORDERED* that judgment shall be entered in favor of defendants and against plaintiffs.

---

2. The House bill to which Congressman Faschell referred is set out in full in 118 Cong.Rec. 16300–16301. The termination provision (insofar as it is pertinent to the issue here) is substantially similar to Section 14 of the Act.

3. The pertinent part of the Senate bill to which Senator Percy referred is set out in 118 Cong. Rec. 30271. It also is substantially similar to Section 14 of the Act.