WILLIAMSON et al. v. BESSEMER
PROPERTIES, Inc., et al.

No. 8435.

Circuit Court of Appeals, Fifth Circuit.

July 6, 1937.

Rehearing Denied Aug. 13, 1937.

Eugene O'Dunne, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., James W. Morris, Asst. Atty. Gen., Sewall Key and Clarence Dawson, Sp. Assts. to Atty. Gen., Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Harry G. Taylor, Sp. Asst. U. S. Atty., of Miami, Fla., and B. F. Paty, C. H. Warwick, Jr., and L. A. Mooney, all of West Palm Beach, Fla., for appellants.

Thomas J. Ellis and George T. Clark, both of Miami, Fla., and J. Field Wardlaw, of West Palm Beach, Fla., for appellees.

A. L. Rankin, E. Harris Drew, and J. Luther Drew, all of West Palm Beach, Fla., for intervenors.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal challenges three orders of the district judge entered in a proceeding under section 74 of the Bankruptcy Act, as amended (11 U.S.C.A. § 202). (1) An order reversing the order of the referee directing liquidation of the debtor's property by sales of it in the bankruptcy court free and clear of liens; (2) an order dissolving an injunction theretofore issued in the proceeding restraining a mortgagee from selling a part of the property under a state foreclosure decree; (3) an order authorizing and directing a sale pursuant to foreclosure decree entered on the equity side of the same federal court.

Appellants are Bula E. Croker, the debtor, one J. K. Williamson, appointed earlier in the proceedings as receiver and custodian of her property, and the United States of America, an unsecured creditor. Appellees are R. E. Robinson, plaintiff in the state court foreclosure judgment, Bessemer Properties, Inc., successor to Palm Beach Company, plaintiff in the federal court foreclosure, and East Shore Company, holder of lien certificates which had been duly adjudicated and allowed in the debtor proceedings.

While the record contains more than 500 pages, it tells a simple and consistent story of procrastination and delay on the part of the debtor, of forbearance, voluntary as to some, and compelled as to others, on the part of her creditors, and of unexampled judicial patience and optimism. The facts, therefore, upon which the right of the ques-

tions mooted depend may be stated in briefest compass.

Bula Croker is the owner of 10,285 lineal feet of speculatively valuable, but wholly nonrevenue bearing ocean front in Palm Beach, Fla. On May 31, 1934, finding herself and her property greatly involved and encumbered with debts, mortgages, and tax liens, she filed under section 74 (47 Stat. 1467, 11 U.S.C.A. § 202) for an extension. Her petition was approved and referred to the referee, but no acceptable plan emerging, on April 15, 1935, the district judge ordered the estate liquidated and referred for administration. No action was taken under this order, and on June 18, 1935, it was vacated. On July 17, 1935, the debtor offered and filed a plan or proposal for extension, and it was referred to the referee for further proceedings. This plan, looking to a quick liquidation and rehabilitation, proposed sales of portions of debtor's property. Though protractedly discussed and amended, the plan failed of acceptance, and on December 18, 1935, it was rejected. In the meantime, the Palm Beach Company, appellee Bessemer's predecessor, on November 6 petitioned for and on December 13 was granted, leave to proceed to foreclose its mortgage on the equity side of the same court. On January 27, 1936, Robinson and the trustee appointed in the state court to make sale were restrained by order in the debtor proceedings from going forward with the state court sale. On February 15, 1936, the debtor moved for approval of her extension plan, as amended by a stipulation between the debtor, the Palm Beach Company, the East Shore Company, and the Mayaca Corporation, a proposed purchaser. This stipulation provided, as to the property mortgaged to the Palm Beach Company, for its sale in 100-foot parcels, gave an eighteen months' extension of the debt on condition that one-third of it be paid each six months, agreed to release all claims to a deficiency decree, and gave the debtor a free hand in regard to sales, subject only to release payments. The East Shore Company made similar agreements as to the property covered by its tax certificates.

It was specifically agreed that no land should be sold under the federal foreclosure decree, unless and until the debtor shall fail to pay the installments as agreed, and that in the event of default and failure to pay any installment coming due under the stipulation, then the Palm Beach Company could apply for and procure as matter of course and of right an order for the immediate sale under the decree of the lands securing its mortgage.

The stipulation was accepted by a majority in number of all creditors, and the approval of the referee was confirmed by the order of the judge. The six months within which the first payment should be made having nearly elapsed without payment, and the validity and amount of the mortgage having in the meantime been on July 18 adjudicated by a final foreclosure decree, the debtor, on August 13 filed with the referee a petition confessing her inability to comply with the plan, and praying a further extension. On August 22 and again on September 4 the Palm Beach Company alleging complete default, filed with the district judge its request for sale under its foreclosure decree, whereupon the debtor filed her reply, admitting her default, but invoking the paramount jurisdiction of the bankruptcy court, and insisting that because there was an equity in the lands over and above all her debts she have a further extension in which to sell them. On October 20, 1936, the district judge denied the application for sale, with leave, however, to renew it on December 29, 1936, when unless the debtor had paid $10,000 on account of taxes the sale would be ordered. On November 20, 1936, notwithstanding and in despite of the judge's extension order of October 20, the referee on the petition of an unsecured creditor entered his order directing liquidation of the estate, appointing a trustee for liquidation, and directing the debtor to convey her interest to the trustee who was ordered to offer the mortgaged property in parcels of not less than 100 feet free and clear of liens. When on December 14 this order was reversed by the district judge as in conflict with his October 20 order, the referee, on December 16, 1936, filed an order purportedly amending, but, in substance repeating his November order. The district judge reversed and set aside this order. On the same day, upon Robinson's application, he dissolved the restraint upon the sale under the state court foreclosure, and upon Bessemer's, dissolved that upon the federal court foreclosure, authorizing and directing each to proceed to sale in his respective foreclosure proceeding. In addition to these orders, a fourth order not appealed from, directed the debtor to file schedules and set April 20, 1937, for a hear-

ing on the question of dismissing the debtor's proceeding, or entering an order of liquidation.

Reduced to the simplest terms, the position of appellants here is that the district judge abused his discretion (1) in reversing the liquidation order of the referee, which in effect nullified the earlier and existing order of the district judge, and (2) in allowing the mortgage creditors to proceed with their foreclosures. This claim of abuse of discretion is predicated on the assumption that the referee could overrule and nullify the prior action of the district judge and upon his finding in connection with the reversed order that if retailed in parcels of 100 feet the property would bring enough to pay the creditors and leave some equity for the debtor.

Appellee Robinson insists that as to him, the orders appealed from were without error, first, because his foreclosure proceeding was begun as a valid lien foreclosure in the state court long before the debtor proceedings had been filed, and the bankruptcy court was therefore without jurisdiction to interfere with it, and, second, that questions of conflicting jurisdiction aside, it was well within the discretion of the court of bankruptcy to permit the state foreclosure to proceed.

Bessemer defends the orders as unexceptionable as to it, because (a) the referee was in effect an intermeddler, and therefore without right or authority in assuming, contrary to the agreement of the debtor and the order of the district judge, to take over the administration of the property to prolong the already overprotracted and futile delay. (b) It was within the district judge's discretion whether he would further stay or allow the foreclosure sale, and under the undisputed facts, that discretion was not abused. (c) The sale was ordered pursuant to an express agreement of the debtor that it should be ordered in event the plan of extension as amended by the stipulation failed, and only after nearly two six-month periods had elapsed without the payment of a dollar.

■ We think it quite plain that the referee's attempted orders were unwarranted intrusions upon the prior asserted authority and jurisdiction of the district judge as judge of the court of bankruptcy, a jurisdiction asserted upon the request and in aid of the debtor who now complains of the exercise of the jurisdiction she invoked.

■ We think it quite plain, too, that the district judge had full authority to make the orders complained of, and that they represented the exercise of a sound and informed discretion. State of Texas v. Donoghue (C.C.A.) 88 F.(2d) 48.

Appellants here proceed and the referee below seems to have proceeded on the assumption that section 74 authorizes a debtor to indefinitely and vexatiously delay and prevent the foreclosure of valid mortgages on large pieces of property merely by a speculative showing that if subdivided and retailed in small tracts, the property might bring more than the debts against it. Appellants' insistence as applied to this case that, where there is equity for the debtor, discretion is abused when property is permitted to be sold under mortgage foreclosure decrees, proceeds upon two incorrect assumptions: (1) Of fact, that there is a real equity here, an assumption erroneous because based upon speculative appraisals when the property is sold by retail and in parcels, instead of as mortgaged; (2) an assumption of law that proceedings under section 74, already unduly prolonged by abortive negotiations and attempts to liquidate, may be converted into an indefinite moratorium proceeding by orders designed to delay foreclosure indefinitely while the trustee conducts subdivisional real estate experiments at the risk and expense of the mortgagors and the taxing authorities. ·

A precisely similar contention was presented to us in Isaacs v. Hobbs Tie & Timber Co., 76 F.(2d) 209. We rejected it decisively. If therefore there were nothing more in this case except an order of the referee directing liquidation on a finding of a speculative equity if the property were sold piecemeal, we should be compelled to sustain the order of the district judge reversing that order. When, as here, the order of the referee in effect for a further indefinite delay was entered, after long protracted and fruitless negotiations and attempts to do, what he now orders done, and in the face of the prior order of the district judge giving debtor additional time upon fixed conditions, it seems too clear for discussion that we should sustain the judge's order. It certainly does not lie in the mouth of debtor and her receiver, some twelve months having elapsed with no payment made, to complain of the action of the court in ordering a sale in accordance with their

agreement upon which the further extension was asked and approved.

As to Robinson, much is said on the points he makes against the jurisdiction of the bankruptcy court to restrain the state court foreclosure. These are (1) that if the proceeding be considered as one in ordinary bankruptcy, the bankruptcy court would have no jurisdiction to prevent the sale, because the foreclosure proceedings in the state court were begun first; (2) that if it be considered an extension proceeding under section 74, no authority to restrain the sale exists, for the only additional authority granted by that section over pending foreclosure proceedings is to restrain them until an extension has been accepted, and the order complained of here was entered after all plans for extension had finally failed. State of Texas v. Donoghue, supra.

It is not necessary, however, for us to decide these questions for, as we have said in Hobbs Tie & Timber Co. v. Isaacs, in 61 F.(2d) 1006, and in Isaacs v. Hobbs Tie & Timber Co., 76 F.(2d) 209, supra, and more recently in State of Texas v. Donoghue, granted that the bankruptcy court could restrain the state foreclosure, it could also decline to do so. If, in its discretion, it could take jurisdiction away from the state court, in the exercise of the same discretion it could surrender it to that court.

■ We think it plain that there was no abuse of discretion in entering the orders complained of, but that a wise and just discretion was exercised.

The orders are affirmed.