## In re FARR et al.

District Court, W. D. South Carolina, Greenville Division.

July 23, 1938.

H. K. Townes, Julia D. Charles, and B. F. Martin, all of Greenville, S. C., for debtors.

E. M. Blythe, Jr. (of Blythe & Bonham), of Greenville, S. C., for Peoples Nat. Bank of Greenville, executor of D. D. Davenport's Estate.

WYCHE, District Judge.

Minnie E. Farr and Nellie Farr, the debtors, together with their deceased brother, and sister, Susie Farr, mortgaged their farm to The Peoples National Bank of Greenville, Executor of the Estate of D. D. Davenport, to secure it upon an indebtedness amounting at this time to more than nineteen thousand dollars. The bank in October, 1935, brought foreclosure proceedings in the state court. After approximately two years' delay, sale was recommended by the Master, to whom the foreclosure proceedings had been referred. The State Circuit Court confirmed the Master's report and ordered the premises sold on salesday in April, 1937, but three days before the date of such sale the debtor, Minnie E. Farr, filed a petition under section 75(o) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203, subsection (o), which stayed the proceedings in the state court. On July 26, 1937, the debtor, Minnie E. Farr, duly filed an inventory and petition for extension as provided in said section of the Bankruptcy Act, and the bank in turn filed its objections thereto, and noticed a motion to dismiss. At the hearing of the motion before me I allowed the debtor, Nellie Farr, to file her petition under the same section of the Bankruptcy Act, and by consent, the two proceedings were consolidated so that title to the entire interest in the land is now in the jurisdiction of this court, the other sister having prior thereto conveyed her interest to the debtors in this proceeding. Thereupon, I referred the matter to the Conciliation Commissioner, and he filed a report of the testimony as to the feasibility of the plan proposed by the debtors.

By the terms of the proposed extension the debtors purpose to sub-divide the premises into small tracts upon which they would put up-set prices, the aggregate of which would amount to several thousand dollars more than the mortgage indebtedness, and to sell these tracts from time to time at not less than the up-set prices. In the meantime, the debtors proposed to have the court stay all proceedings until the premises could be so sold, and during the stay agreed to apply the income from farming operations to the payment of the debt. The bank objected to this proposal on the ground that it involved a wholly speculative venture, and contended that it had no assurance that the most desirable portion of the land would be sold free of the lien of its mortgage for an amount inadequate to pay the indebtedness, and that a large portion of its indebtedness would be left unpaid, and the most valuable portion of the property disposed of.

The debtors having failed to obtain acceptance of a majority in number and amount of all creditors whose claims are affected by the extension proposal filed amended petitions asking to be adjudged bankrupts under section 75, subsection (s) of the Bankruptcy Act, 11 U.S.C.A. § 203 (s). The debtors were duly adjudged bank-

946

rupts under said section and the matter referred to the Conciliation Commissioner for further proceedings thereunder. An appraisal of the land was made, in which a majority of the appraisers filed a report valuing the land at $14,850 as a farm, and $24,000 as a prospective sub-division development. The amount of the debt is shown to be $19,032.05 as of June 27, 1938, which includes principal, interest, attorneys' fee and taxes, but does not include court costs or insurance premiums advanced by the bank. The matter is now before me on motion of the bank for a sale of the property and a liquidation of the debt, and on motion of the debtors for an order continuing the stay of the proceedings and fixing the rental at $200.00 per year.

 Although, ordinarily, the provision of the Bankruptcy Act regarding agricultural compositions and extensions gives the debtor a three-year period of rehabilitation, the stay provided for is not absolute but the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period. In re Dandy, D.C., 23 F. Supp. 361; Wright v. Mountain Trust Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; In re Brewster, D.C., 20 F.Supp. 789; Williamson v. Bessemer Properties, 5 Cir., 91 F.2d 257; In re Davis, D.C., 16 F.Supp. 960.

I have had different phases of this matter before me for more than one year. The only proposal which has been made by the debtors is to allow them the full benefit of the three-year stay in order that they may speculate upon the subdivisional value of the land.

Full testimony has been taken concerning the feasibility of their plan, and their ability to rehabilitate themselves within the statutory period. Counsel for the parties and I made a personal inspection of the land for the purpose of ascertaining if there was any hope for rehabilitation.

 After a consideration of all the facts and an inspection of the land itself, I am convinced that there is no reasonable hope that these debtors can rehabilitate themselves within the three-year period. To grant the motion of the debtors by allowing them the stay and providing for the payment of a rental of $200.00 per annum, would be taking the property rights of the bank under its mortgage and giving them

to the debtors. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S. Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106.

Under the decisions and the facts in this case I do not feel justified in allowing the debtors any further stay. For the foregoing reasons the motion of the bank must be granted, and the motion of the debtors denied.

In accordance with the views herein expressed counsel may present an order of foreclosure and sale of the premises.