### In re BYRD.
#### No. 8399.

District Court, D. Maryland.
June 18, 1936.

James W. Chapman, Jr., of Baltimore, Md., and Herbert E. Perkins, of Chestertown, Md., for mortgagee.

John A. O'Shea, of Baltimore, Md., for debtor.

COLEMAN, District Judge.

This case is now before the court upon petition of Herbert E. Perkins, assignee of the Kent County Savings Bank, mortgagee, to dismiss the proceedings instituted and prosecuted by Maxwell Hurlock Byrd under subsection (s) of section 75 of the Bankruptcy Act, as amended in 1935 (11 U.S.C.A. § 203 (s). Byrd, the debtor, has answered this petition claiming that the proceedings should not be dismissed, but that he is entitled to the statutory moratorium granted by subsection (s) of section 75 of the act and all of the other rights incident thereto. Hearings have been had, the last one on the 21st day of May, 1936, at which time both the debtor and the assignee-mortgagee were granted the opportunity of restating and rearguing the various questions of both fact and law which have heretofore been presented, including the question as to whether subsection (s) of section 75 of the act is constitutional.

Since the proceedings have been protracted and the pleadings are extensive, a review of what has occurred from the beginning is desirable for a proper understanding of the case.

On November 4, 1935, Maxwell Hurlock Byrd, the debtor, first invoked the aid of this court by filing a petition as a farmer for relief under section 75 of the act, as amended (11 U.S.C.A. § 203), stating that he desired to effect a composition or extension of time within which to pay his debts as provided within that section. It appeared that his farm in Kent county, Md., had been mortgaged since 1917, with periodical renewals, to the Kent County Savings Bank, Chestertown, Md.; that the mortgage being in default on August 1, 1935, the bank assigned the mortgage to Herbert E. Perkins who instituted foreclosure proceedings in the circuit court for Kent county pursuant to the power of sale contained in the mortgage; that the property was offered at public sale on August 27, 1935, and was bid in by the mortgagee bank for the sum of $9,000; that the circuit court for Kent county on August 29, 1935, passed an order ratifying and confirming the sale unless cause to the contrary was shown on or before the 1st day of the following November, 1935; and that on October 31,

1935, exceptions were filed but were not heard because, as above stated, the proceedings in this court were instituted on November 4th. On the same date this court approved the petition as properly filed and referred the proceeding to the appropriate conciliation commissioner for the purpose of proceeding further as required by the provisions of section 75 of the act.

On December 18, 1935, the conciliation commissioner filed his report to the effect that Byrd, the debtor, was unable to obtain the requisite assent of a majority in number and amount of his creditors to his proposed composition and extension and the conciliation commissioner, therefore, recommended that the proceedings be dismissed. On January 6, 1936, Byrd, the debtor, filed an amended petition in this court admitting that as the conciliation commissioner reported, he had failed to obtain the requisite assent of creditors and he theretofore asked to be adjudged a bankrupt and that his property be appraised, and that he be allowed to retain possession of it under subsection (s) of section 75 of the act, as amended. In this petition, and in conformity with the relief thereby sought, he asked for a stay of any further action by the state court with respect to the sale under mortgage foreclosure of his farm, which sale, as above explained, had been made but never finally ratified by the state court because of the institution of these proceedings. On the same day the debtor's amended petition was approved. On January 13, 1936, Herbert E. Perkins, assignee, filed a counter petition reasserting the foreclosure sale of the debtor's farm on August 27, 1935, and the order nisi of the circuit court for Kent county with respect thereto and prayed that since the debtor had failed to effect a composition and extension with his creditors in conformity with the law, and since the conciliation commissioner had recommended a dismissal of the proceedings, they should now be dismissed. Thereupon, on the same day, this court directed Byrd, the debtor, to show cause, on or before January 27th, why the proceedings should not be dismissed. As a result, on January 17th, Byrd, the debtor, filed an answer reasserting his right to the advantages of subsection (s) of section 75 of the act, and asked that both the assignee's petition and his answer thereto be set down for hearing. This was accordingly done and on February 14th testimony was taken, arguments heard, and briefs filed, as a result of which this court found that Byrd, the debtor, was a farmer within the definition of subsection (s) of section 75 of the act, and that although he had been in possession of his mortgaged farm since the beginning of these proceedings in this court, that is, since November 4, 1935, he had paid no rental thereon and no taxes or insurance, and made no provision for the upkeep of any of the buildings or other improvements thereon, that he had made only slight provision for the cultivation of the farm and had no income from any other source, and that as a result of all of which and of the staying of the mortgage foreclosure sale proceedings, the mortgagee had suffered continual heavy losses. Accordingly, on March 24th, this court ordered the debtor within thirty days to pay into court $250 which the court found to be one-half of a reasonable annual rental for his occupancy of the farm and further ordered that Byrd, the debtor, should give some additional assurance of his ability to meet the ensuing requirements of subsection (s) of section 75 of the act with respect to future rental payments.

On the 21st day of May, a further and final hearing was held for the purpose of determining the character and extent of such additional assurances required to be given, and also for the purpose of granting to the parties a rehearing upon their petitions which had been filed in the preceding January, as above explained.

The court reaches the conclusion that the petition of the assignee-mortgagee for dismissal of these proceedings must be granted for the following reasons. Subsection (s) of section 75 of the act, as amended (11 U.S.C.A. § 203 (s), grants permission to one who is actually a farmer within the definition of subsection (r) of that section, as amended (11 U.S.C.A. § 203 (r), and who has, in good faith, petitioned for a composition or an extension, to ask for his adjudication in bankruptcy and for further proceedings under subsection (s), the effect of which is to place such petitioner in unmolested possession of his real estate for the period of the statutory moratorium, subject only to the orders of the court with respect to the terms and conditions as to payment of rental or installments on debts due to secured or unsecured creditors, or

payment of both, as the court may deem proper in the interest of creditors. But any reasonable interpretation of this subsection must presuppose a probability of the debtor's eventual liquidation of his debts. This in effect means that it is not sufficient for the petitioner merely to institute the proceedings with the wild hope that he will be able to have accepted, by the requisite number and amount of creditors, a plan for liquidation of his debts, but the hope must itself be founded upon reason, which means that there must be some probability of eventually liquidating his debts in conformity with the plan. In short, the act is not to be construed as affording protection to every petitioner who invokes its provisions without having substantially more to recommend him to the court for relief than his bare status as a farmer and his need of assistance. See In re Allen D. Schaeffer & George W. Schaeffer, 14 F.Supp. 807, decided by this court on April 2, 1936; also, In Re Borgelt (C.C.A.) 79 F.(2d) 929; Id. (D.C.) 10 F.Supp. 113.

The proposal offered by the present petitioner, Byrd, was the following: "First: To the Kent County Savings Bank, holder of mortgage claim amounting to $12,305.91. The same amount to be repaid by a mortgage of $10,000.00 which is now in effect between the parties, the balance of $2,305.91 plus the claim of $1,096.98, to be repaid in the following manner:

"$100.00 every three months, the interest on the mortgage of $10,000.00 to be paid at the rate of 6% semi-annual.

"Second: To Massey and Wilmer, and C. C. Ivens, their claims to be repaid 10% the first year and 10% at the end of the second year."

Only the creditors named in the second paragraph of this proposal accepted it, representing only about 11 per cent. of the total amount of the claims. If it could ever have reasonably been assumed that Byrd would have been able to meet the terms of the first paragraph of his proposal which related to the ostensible taking care of the mortgagee, what has since transpired in these proceedings conclusively takes away the right to persist in any such assumption. By the plan, offered six months ago, Byrd proposed, in consideration of the extraordinary rights provided by subsection (s) of section 75, to pay to the mortgagee, in addition to giving him a new mortgage for $10,000, the balance of the mortgagee's total claim at that time, to wit, approximately $3,400, in installments of $100 every three months, plus interest on the principal of the mortgage at the rate of 6 per cent. semiannually. In other words, the plan contemplated that by now Byrd would have paid, under it, to the mortgagee approximately $500 in cash. The record in this case is totally devoid of any suggestion that Byrd had, at any time since the beginning of these proceedings, been able to pay any such amount or any substantial part of it as a result of crops grown on the farm or from any other known source. On the contrary, when this court put Byrd, by its order of March 24th, under the requirement to pay into court within thirty days the sum of $250 as one-half of a reasonable rental of the farm, which the court fixed at $500, a low figure, Byrd was able to meet this requirement only with real difficulty and presumably by a loan or gift from outside, undisclosed sources, and, furthermore, has not been able to give to the court as required by the same order just referred to any additional assurance that he is able to meet any similar future rental requirements with any degree of certainty. Nor is this by any means the entire story. The appraisal of his farm made pursuant to the provisions of that section of the Bankruptcy Act which Byrd has invoked shows a fair value of only $10,000. Under present economic conditions and the net earning capacity of similar farm land in the same general locality, this figure is believed to be a liberal one. But in any event, the additional vital facts which the court cannot blink are these: The principal of the mortgage debt equals the appraised value of the farm. In addition, there is interest due from March 30, 1933, that is, for more than three years, amounting to $1,900. The mortgagee has paid one year's taxes amounting to $311.33 as well as insurance for two years amounting to $69.83, to which must be added miscellaneous outlay for repairs amounting to $41.08 and for the purchase of fertilizer and seed wheat $239.01, or a grand total of $12,561.25 representing the outlay of the mortgagee. Furthermore, there are still unpaid the state and county tax bills for 1934 and 1935 on this property, aggregating $381.01. As against all of this, the only apparent source of net revenue is that part of the farm sown

in wheat, namely, eighty acres, by a farmer supplied by the mortgagee, the farm being now tenanted by the debtor's son-in-law who, however, has not co-operated with the mortgagee for the proper cultivation of the farm. The time for harvesting this wheat is fast approaching, but the extent of the yield is, of course, unknown. From the debtor's own testimony—vague and unsatisfactory—it would appear that in neither 1934 nor 1935 was there realized from all crops on the farm a net amount of more than $200.

It is believed that the aforegoing analysis of Byrd's indebtedness to the mortgagee makes it self-evident that neither the plan which he proposed nor any other plan which can be conceived may reasonably be calculated to effect any liquidation of his debt to the mortgagee. At this point it should be pointed out that it is only a very broad, liberal interpretation which the court has felt constrained to give to the definition of the term "farmer" as set forth in subsection (r) of section 75 of the act that prevented the court from dismissing the proceedings in the initial stages. Byrd abandoned his residence on the farm. Stress of poverty may have so required. But he also has failed to co-operate with the mortgagee in proper efforts to obtain and retain a tenant thereon, which has no justification. Thus, Byrd may be said to be only colorably a farmer. He has spent a large part of his time in Baltimore where, according to his testimony, he has sought other employment and a means of livelihood. But he has met with no real success and the sum and substance of the whole matter is that the bank, for the past several years, has not only been most liberal to him in extending his mortgage and granting him a moratorium with respect to interest payments, but has been paying out sums of substantial size in order to keep the property from excessive deterioration and probable sale for taxes.

In addition to the aforegoing, it is pertinent to point out that were there a probability of eventual debt liquidation by Byrd, the court could, in its discretion, pursuant to the provisions of paragraph (2) of subsection (s) of section 75, and should in fairness to the mortgagee, require payments by Byrd on the principal due and owing to the mortgagee, and could require such payments to be made quarterly, semiannually, or annually, "not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay with a view to his financial rehabilitation." The necessary inference from this discretionary power vested in the court is that if, after careful examination of all of the facts and circumstances surrounding the property and the debtor's financial condition, ability, and disposition to assist in the liquidation of his debts, it appears that the entire prognosis is not only bad but virtually hopeless, the court is not required to do a futile act, that is, first to order the debtor to make certain payments before concluding that he cannot do so, for this would be simply requiring the court to order a futility. Byrd has already had the benefit, for six months, of the moratorium provisions of subsection (s). In view of his hopeless financial condition, the court concludes that it has been liberal to him beyond any requirements of subsection (s) because, as just explained, those requirements must start with and be based upon the premise that there is in fact some probability of the debtor's rehabilitation along reasonable lines, consistent with the rights of his creditors. Such are not believed to be possible in the present case. On the contrary, the court concludes that Byrd has invoked the provisions of subsection (s) not in good faith for his own bona fide rehabilitation, but rather for the purpose of trifling both with his creditors and the court, in the hope that thereby he may ultimately avoid his just debts or the major portion thereof. This court cannot assume that subsection (s) of section 75 of the Bankruptcy Act was ever conceived or passed for any such purpose and therefore must deny to the present debtor any further assistance thereunder.

In view of the conclusions herein reached, it becomes unnecessary to discuss an additional point which has been raised, that is, whether Byrd has in fact any standing in this court by reason of the fact that at the time these proceedings were instituted, he was one of two tenants in common of the property and that the other tenant is not a party to these proceedings; and likewise, it is not necessary for the court to pass upon the constitutionality of subsection (s).