## In re PALMER.

District Court, D. North Dakota, S. E. D. Oct. 8, 1937.

Nilles, Oehlert & Nilles, of Fargo, N. D., for creditors.

William Lemke, of Fargo, N. D., for petitioner.

MILLER, District Judge.

Harry D. Palmer, the debtor herein, having heretofore filed in this court his petition for composition and extension under the provisions of subsection (n) of section 75 of the Bankruptcy Act, as amended, 11 U. S.C.A. § 203(n), and said petition having heretofore been referred to the proper conciliator, it further appears that on July 23, 1937, at the first meeting of creditors, the debtor made the following proposal to his creditors:

"The undersigned Harry D. Palmer of Ayr in the County of Cass and District aforesaid, the petitioner herein, hereby makes the following proposal to his creditors:

"The debtor proposes that the mortgagee and sheriff's certificate holder, Grace Marie Sorkness, pay to him the sum of six hundred dollars for a deed to the real property described in her mortgage covering the SW¼ of Section 8 in Twp. 141 No. of Rng. 53 in Cass County, N. D.; and that if said mortgagee should refuse or fail to do this, the debtor proposes an extension of time until September 15th, 1938 in which to pay or refinance the said mortgage of said mortgagee, or Sheriff's certificate holder. In either event, the debtor to have the 1937 crop.

"To his unsecured creditors as listed in his schedules, he proposes to pay them in full and further proposes that they grant him an extension of time until September 15th, 1938, in which to make such payment.

"To the Farmers State Bank of Erie, N. D., the secured creditor holding chattel mortgage covering the debtor's live stock and machinery, he proposes as follows, viz: an extension of time until Sept. 15th, 1938, in which to pay or to refinance the said chattel mortgage due to said Farmers State Bank of Erie, N. D.

"The said petitioner prays that this proposal be submitted to his creditors in the manner provided by law, and if consented to and accepted by a majority of the said creditors, that such other and further proceedings be had as are provided for by law.

"Dated this 23rd day of July, 1937."

At said creditors' meeting, Grace Marie Sorkness, mortgagee and certificate holder at foreclosure sale, through her counsel, moved to dismiss the same in so far as it affected the real estate described in debtor's schedule, to wit, the southwest quarter of section 8, in township 141, range 53, on the grounds that subsection (n) of section 75, in so far as applicable to real estate, was unconstitutional and null and void; if not null and void, then not applicable to certificates of sale on mortgage foreclosure where the period of redemption had expired by the laws of the State of North Dakota.

The conciliator, having overruled said objections and motion, on July 30, 1937, Grace Marie Sorkness filed in this court her petition for an order dismissing said proceedings in so far as they affected said real estate, realleging the invalidity and unconstitutionality of said subsection (n) of section 75, and also the additional grounds that the proposal made by the debtor was void and of no effect because not made in good faith; and (2) that the financial condition of said debtor, as disclosed by the record, was such that rehabilitation was neither feasible nor possible.

The matter came on for hearing and argument on an order of this court heretofore issued requiring the debtor to show cause on September 2, 1937, why his application for composition and extension should not be dismissed.

On said hearing and argument counsel for the debtor expressed doubt as to the sufficiency of the proposal made and suggested to the court that leave should be granted to

file an amended proposal and asked that time be granted to file a written brief.

Thereafter on September 7, 1937, the debtor filed, by leave of court, his amended proposal, in words and figures, as follows:

"Comes now the debtor, Harry D. Palmer, and makes the following offer and proposal to his creditors in conformance with Section 75 of the Bankruptcy Act, as amended:

"That if the creditors will scale down and reduce their obligations 25%, the debtor will pay said reduced amounts in yearly installments, the first installment October 1st, 1937, in the amount equal to one-fourth of my farm income at values as of October 1st, 1937, the second installment October 1st, 1938, in the amout equal to one-third of my farm income at values as of October 1st, 1938, the third installment October 1st, 1939, if the same is necessary to extinguish the claims of the creditors at the reduced amounts, in the amount equal to one-half of my farm income at value as of October 1st, 1939, and to continue said payments in the 1939 manner until the obligations of the creditors are paid. That the debtor further agrees to pay the current taxes during the above described period, and agrees to keep the buildings and land in good condition.

"Dated at Fargo, North Dakota, this 7th day of September, 1937.

"Harry D. Palmer."

The questions before the court, then, in the order submitted are: (1) Is subsection (n) of said section 75 constitutional in so far as it relates to the real estate involved; (2) are either of the proposals made such good-faith proposals as required by law; and (3) is the debtor's financial situation as disclosed by the record such that rehabilitation is feasible?

In view of the record presented, the question as to whether or not the debtor has made such good-faith proposals will first receive the attention of the court.

The debtor's counsel, in his later brief filed herein, freely admits that the first proposal does not constitute a good faith proposal. Therefore, such proposal will not be further considered.

The question of what constitutes a good-faith proposal on the part of a debtor, who has invoked the provisions of subsection (n), has been so frequently before the courts and so uniformly and definitely stated that it remains only for this court to apply the rule to the facts herein.

Quotations from a few of the many cases stating the rule follows:

In re Vater, D.C., 14 F.Supp. 631, 632:

"The phrase 'good faith' is not defined in the act, hence it is to be given no technical or refined meaning. In common usage it has a well-defined and generally understood meaning. It is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, absence of a design to take an unconscionable advantage of another, and, where employed in connection with legal obligations, it is evidenced by such candor and frankness in recognizing such obligations as reflect sincerity and willingness to perform them. While considerable latitude must be allowed to meet the circumstances of each particular case, and no hard and fast rule should be prescribed by which to measure good faith under all circumstances, it may be safely observed that in order to measure up to the requirement of the law, integrity of plan and purpose must be reflected in every proposal for composition and extension and mere perfunctory compliance with the letter of the law is not sufficient.

"The theory of the law under which a good faith proposal is made a condition precedent to the relief provided by subsection (s) [11 U.S.C.A. § 203(s)] presupposes a fair opportunity to creditors to weigh and consider the debtor's voluntary offer in comparison with the alternative remedy afforded such debtor under the provisions of subsection (s).

"Certainly, no debtor, acting in good faith, could reasonably expect acceptance by his creditors of a proposal fixing an extension or composition substantially more favorable to him and less favorable to creditors than the terms of subsection (s), and hence a proposal of composition and extension upon indefinite and uncertain terms affording no fair basis of comparison with the terms of subsection (s), would on its face negative every presumption of good faith on the part of the debtor making the proposal."

In Re Borgelt, 7 Cir., 79 F.2d 929, affirming 10 F.Supp. 113, 116, the court said: "The proposal should be sufficiently definite and certain that the creditors may understand what it amounts to."

In Re Duvall, D.C., 14 F.Supp. 799, 800, it is said: "It is not the intention of section 75 of the Bankruptcy Act that debtors could file petitions and procure lengthy delays in

the settlement of their indebtedness by making promises of trivial payments over a number of years. When debtors seek to take advantage of this act, they must be prepared to offer some terms of composition or extension which recognize the extent of their indebtedness and offer a fair and reasonable method of liquidating it without delay over a long period of time and an uncertain settlement at the end of that period."

In Re Schaeffer et al., D.C., 14 F.Supp. 807, it is said:

"As condition precedent to right of farmer-debtor to avail himself of mortgage moratorium provided by Bankruptcy Act, farmer must first have submitted to his creditors a proposal which in good faith contains an equitable and feasible method of liquidation for creditors and is for their best interests as well as his own."

" 'Good faith,' as used in provision of Bankruptcy Act requiring farmer-debtor, as condition to right to avail himself of mortgage moratorium provided by act, to first submit in good faith to his creditors a composition proposal, implies more than absence of actual fraud, and more than a futile gesture or mere formality, and requires a reasonable probability of an ultimate debt satisfaction within moratorium period."

In Re Byrd, D.C., 15 F.Supp. 453, the court says: "Where it appears that court should, in fairness to mortgagee, require payments on mortgage principal, and that financial condition of farmer-debtor is virtually hopeless, court, before denying moratorium under Bankruptcy Act, need not do futile act by first ordering debtor to make certain payments. * * * This in effect means that it is not sufficient for the petitioner merely to institute the proceedings with the wild hope that he will be able to have accepted, by the requisite number and amount of creditors, a plan for liquidation of his debts, but the hope must itself be founded upon reason, which means that there must be some probability of eventually liquidating his debts in conformity with the plan. In short, the act is not to be construed as affording protection to every petitioner who invokes its provisions without having substantially more to recommend him to the court for relief than his bare status as a farmer and his need of assistance."

In re Davis et al., D.C., 16 F.Supp. 960: "To authorize three-years stay of foreclosure of farm mortgage under Bankruptcy Act, equity must be found which should be saved for debtor, out of which capital entity there may be reasonable expectation that mortgagee's three-year wait will not be in vain."

In Re Paul, D.C., 13 F.Supp. 645, 647, the court says: "It is not every right or interest in real estate that may be administered under subsection (s) of section 75 of the act [11 U.S.C.A. § 203(s)]. To permit the renting of real estate and the right of possession to a debtor for a period of three years where he only has a slight right or interest in and to the property would amount to the taking of private property from one person and giving it to another, and this the Congress cannot do without making reparation to the person from whom the property is so taken. * * *. It would seem to follow that where it appears that the debtor intends to take advantage of the act and keep possession of the land for ulterior purposes and does not intend to, or circumstances are such that in all reasonable probability he cannot, rehabilitate himself within three years, to permit him to have his mortgaged land administered under section 75(s) would jeopardize and affect the security of the creditor and be beyond the intention of the act."

In Tennessee Publishing Company v. American National Bank, 299 U.S. 18, 57 S.Ct. 85, 87, 81 L.Ed. 13, the Chief Justice, speaking for the court, said: "However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation."

In Provident Mutual Life Insurance Company of Philadelphia v. University Evangelical Lutheran Church of Seattle, 9 Cir., 90 F.2d 992, 995, it is said: "The good-faith provision of the statute is not satisfied merely by honesty and good intentions. There must be a showing that the petitioners have a basis for expecting that a reorganization can be affected."

In the case of Robert Page Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, Virginia et al., 300 U.S. 440, 57 S.Ct. 556, 562, 81 L.Ed. 736, decided March 29, 1937, Mr. Justice Brandeis, delivering the opinion of the court, said: "The offer of composition must be in good faith (section 75, (c), (i), 47 Stat. 1471, 1472), and if the debtor is beyond all reasonable hope of financial rehabilitation, and the proceedings under section 75 cannot be expected to have any effect beyond postponing

inevitable liquidation, the proceedings will be halted at the outset."

■ From the foregoing authorities, all of which have received the approval of the Supreme Court of the United States, it is clear that before a petitioner for composition and extension under subsection (n) of section 75 is entitled to amend his petition and become entitled to the benefits provided by subsection (s) of section 75, as amended, 11 U.S.C.A. § 203(s), it must first be made to appear from the record (1) that he has made a proposal to creditors, the terms of which are not less favorable to such creditors than is provided in subsection (s); and (2) that the debtor's financial situation is such that there is a reasonable probability and hope of the debtor's financial rehabilitation within the three year period provided in subsection (s).

■ Tested by the rules laid down in the foregoing decisions and provisions of subsection (s), it will be seen that the debtor's second proposal is far more favorable to himself and much less favorable to the creditors than the provisions of said subsection (s) will permit. It is very indefinite. It offers the creditors as their first payment an amount equal to one-fourth of the debtor's farm income for the year 1937 at values as of October 1, 1937. The debtor does not inform his creditors whether he had any farm income for the year of 1937, or if he had, the value or approximate value of such farm income. For the year 1938 he offers his creditors an amount equal to one-third of his farm income as of the value of October 1, 1938, and for the year 1939, one-half of his farm income as of the value of October 1, 1939, and to continue said payments in the 1939 manner until the obligation to the creditors is paid. He does not estimate or approximate such value or disclose his income, if any, from the property in prior years. Neither the creditors nor the court, therefore, can have any idea as to the probable or approximate amount the creditors would receive from such share. Second, the proposal contemplates a period of rehabilitation longer than the three-year period provided in subsection (s). It does not fix any time in which full or final payment shall be made. Clearly such proposal does not come within the definition of a good-faith proposal.

Looking at the debtor's present financial situation, it appears from the verified schedule filed that he owes the State of North Dakota taxes in the sum of $600; that the amount required to redeem from said foreclosure sale to July 30, 1937, including the taxes paid by Grace Marie Sorkness, would be the sum of $7,260; that in addition thereto the debtor owes the Farmers State Bank of Erie, N. D., $1,125, secured by first chattel mortgage covering all of the debtor's personal property, except his household furniture; that he owes unsecured claims amounting to $1,757 and $1,080 for seed furnished in prior years. That he owns no other real property other than the land hereinbefore mentioned. His household goods and wearing apparel he values at the sum of $200; he has one horse, six cows, five head of calves, two hundred chickens, all of the value of $288; one Ford truck valued at $250; one binder, one tractor, one mower, one rake, three wagons, one sleigh, one cultivator, one field cultivator, and miscellaneous tools and implements, all of the value of $360. He has no seed or feed or cash on hand and no unencumbered property of any kind except his household goods. His total indebtedness is $10,722.

His proposal does not bind the debtor to perform any act except to farm the land and pay the creditors a fraction of an indefinite income, if any, and does make such indefinite extension available to the debtor even though no income at all was received. Further, it does not appear how the debtor will be able to farm said property without money, capital, feed, or seed. From the whole picture of his financial condition there is no reasonable probability or hope of his financial rehabilitation within the three-year moratorium period or at any time, and, therefore, could only postpone the date of inevitable liquidation. His proposal is not such good faith proposal as contemplated by law.

It is not claimed that the debtor has taken advantage of or complied with any state law relating to moratorium or extension of time of his right to redeem from the foreclosure sale.

For the reasons above stated, the motion to dismiss must and will be granted. Therefore, it is unnecessary to decide whether or not subsection (n) is constitutional.