## In re ANDERSON.
### No. 7036.

District Court, E. D. Illinois.
May 28, 1938.

Dove & Love, of Shelbyville, Ill., for petitioner.

J. E. Dazey, of Findlay, Ill., for debtor.

WHAM, District Judge.

This matter comes before the court on the petition of the Union Central Life Insurance Company, a mortgage creditor, for a review of an order of T. E. Ames, Conciliation Commissioner for Shelby County, Illinois, before whom the matter is pending, denying the petition of the petitioner for the appointment of a trustee and a sale of the land covered by petitioner's mortgage and striking said petition from the files.

An examination of the records herein and the evidence taken before the Conciliation Commissioner at the hearing on said petition discloses that the debtor was adjudicated a bankrupt under section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on November 6, 1935; that he owns a farm of 166 acres in Shelby County, Illinois, upon which he lives with his family and upon which the petitioner holds a mortgage dated January 2, 1926, given to secure a promissory note of even date therewith in the principal sum of $11,500, bearing interest at the rate of five and one-half per cent per annum; that debtor became in default on said note and mortgage in 1932 and there is now due thereon approximately $15,000; that the land and improvements originally cost debtor approximately $24,000 but are not now of greater value than $12,450; that the land was rented by the Conciliation Commissioner to the debtor for the year 1937 for a cash rental of $728 and is now rented to the debtor for 1938 for a cash rental of $728; that the debtor has kept the rents paid, has made some improvements on the farm in nature of fencing, fertilizing, etc., and has in every way been in the exercise of the utmost good faith and diligence in his efforts to rehabilitate himself financially; that, since bankruptcy, he has leased and farmed other lands of nearly equal acreage beside that here in question, bought valuable and costly machinery and equipment, encumbering some of his own crops and personal property for half the purchase price, paid his current bills, except in part for the new machinery and equipment; that his gross income last year was approximately $2,500 and was derived chiefly from milk, poultry, hogs, wheat and corn.

The debtor's family consists of one daughter who keeps house for him, one boy eighteen years of age who helps him on the farm, one daughter who teaches school and one daughter who is attending teachers' college.

The debtor has made earnest efforts to place a loan upon his farm that would enable him to pay off the encumbrance held by petitioner but has been unable to get the required amount. The debtor has not reduced the principal of his indebtedness to petitioner nor has he been able to pay in full accruing interest and taxes though during the last year the rental paid to the Conciliation Commissioner has been almost sufficient for that purpose. If the value of the improvements to the farm were added to the rental paid to the Conciliation Commissioner by the debtor the total would be ample to cover interest on the entire encumbrance as well as taxes during the last year and possibly the last two years.

Petitioner insists that it is now apparent that there is no reasonable hope that debtor will be able to rehabilitate himself financially within the three-year statutory period, that to continue the proceeding cannot reasonably be expected to have any effect beyond postponing inevitable liquidation, and, in view of these facts, that it is the duty of the court now, under the terms of the Act (Paragraph (3), subsection (s), section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203(s) (3), when properly construed (Wright v. Mountain Trust Bank, 300 U.S. 440, at pages 461, 462, 57 S.Ct. 556, 561, 81 L.Ed. 736, 112 A.L.R. 1455), to appoint a trustee and order the farm sold. Emphasis is laid on the fact, which is apparent, that the debtor has no equity in the land. It is urged that the evidence adequately shows that he cannot reasonably expect to raise enough money on the land, or otherwise, to pay in full his debts, either secured or unsecured during the three years allowed by the statute. This seems to be true.

The foregoing contention raises a nice point that may well be considered

determinative here. Under paragraph 3 and under the decision of the Supreme Court in Wright v. Mountain Trust Bank, supra, if it appears from valid evidence at any time after adjudication that "the debtor is beyond all ·reasonable hope of financial rehabilitation" (Wright v. Mountain Trust Bank, supra, Note 6 at pages 461, 462, 57 S.Ct. at page 562) the court must halt the proceedings. In the language of the decision, "Paragraph 3 also provides that 'if * * * the debtor at any time * * * is unable to refinance himself within three years,' the court may close the proceedings by selling the property. This clause must·be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period." But, for the farmer debtor to rehabilitate himself financially or refinance himself within· the meaning of the provisions of subsection (s) of section 75, is it necessary that he place himself in position to pay in full all his creditors, secured or unsecured, or both? Or, is it only necessary that the debtor shall be able, during the statutory period of the moratorium, to pay a fair rental upon the property which he retains under subsection (s), both real and personal, with the exception of his unencumbered exemptions, and within such period put himself in position to pay for said property at its appraised, or, if reappraised, at its reappraised value? A careful reading of subsection (s) of section 75 in the light of the entire section shows, I think, that the latter meaning was intended.

It must not be forgotten that we are dealing with a bankruptcy law that has for its purpose the salvaging of farmers who are insolvent and unable to pay their debts in full. In bankruptcy it has never been supposed that the ordinary bankrupt would be able to pay any of his creditors in full, except those who held ample security. No more is it to be expected under subsection (s). In so far as the bankrupt farmer is unable to pay his debts in full he is entitled to a discharge therefrom (see paragraph (3) as in ordinary bankruptcy even though he succeeds in refinancing himself under the terms of subsection (s). Under subsection (s) the only essential requirements of the farmer, aside from complying with procedural conditions, are

that he shall act in good faith and that he shall, during the period of the moratorium, pay into court the reasonable and customary rental value of the property retained by him and at the end of three· years, or prior thereto, pay into court the appraised or reappraised value of the property which he retains, with due allowance at all times for his lawful unencumbered exemptions.

It is true that the court, in its discretion, under the provisions of paragraph (2) of subsection (s), 11 U.S.C.A. § 203 (s) (2), for the protection of creditors, may require the farmer to pay into court for the benefit of creditors definite sums, fixed by the court, in addition to rentals. But such requirement must not be inconsistent with "debtor's ability to pay, with a view to his financial rehabilitation." His failure to comply with such reasonable order of court could justify the appointment of a trustee and the sale of the property under paragraph 3 as being a failure to comply with an order of court, but not on the theory that he is unable to refinance himself. This·situation is not presented here.

It is also true that Congress, to insure the constitutionality of the law, has provided therein that a secured creditor, if not satisfied to accept the appraised or reappraised value of his security, may have a public sale of the property upon which he has his lien and buy it in at the sale, subject to the farmer's right of redemption, within ninety days, even though the farmer has succeeded in raising enough money to pay into court for the benefit of such secured ˋcreditor the appraised or reappraised value of the encumbered property. Pursuing this undoubted right, the secured creditor may deprive the farmer of the intended ultimate benefit of the provisions of the Act which is the saving of his farm. Yet I think it was in the mind of Congress that the ordinary secured creditor ·would usually be willing to accept, in lieu of his security, its fair cash value as established by a fair appraisal; that the farmer to refinance himself within the meaning of the Act should be compelled to refinance not his full indebtedness but only the appraised value of the encumbered property as well as the unencumbered property retained by him; that he should not be compelled, in any case, to refinance the entire secured indebtedness, if such indebtedness exceeds the value of its security except to the extent that he

might have other property or assets available for that purpose. Otherwise, judging from observation and experience, section 75, subsection (s), intended to meet a great financial crisis among the farmers, can be helpful in comparatively few cases.

It is generally known that, after the slump in farm values, large numbers of farmers with supposedly substantial equities in their mortgaged farms awoke to find their farms mortgaged far beyond their value though there had been an ample margin of safety when the encumbrances were placed thereon. Subsections (a) to (r) of section 75, 11 U.S.C.A. § 203 (a–r), were enacted to relieve against such situations and, if possible, to enable the honest but financially embarrassed farmer and his creditors to adapt themselves by agreement, under the supervision of the court, to the actual conditions caused by the radically lowered values so that the farmer might save his farm and necessary equipment and at the same time the secured creditors be protected to the full value of their security and the debtor's ability to pay and the unsecured creditors to the full value of all unencumbered property over and above the debtor's exemptions. Subsection (s) was enacted with a view to the accomplishment of approximately the same result through a bankruptcy proceeding in cases in which the farmer, acting in good faith, found it impossible to reach a fair settlement with his creditors by way of composition or extension under subsections (a) to (r).

If I am correct in my interpretation of the Act, then to justify an order of the court terminating the stay, appointing a trustee and directing a sale of the property on the ground that the farmer cannot refinance himself, it must appear from the record and from the evidence that there is no reasonable hope that debtor will be able within the period of the three year moratorium to pay in semi-annual payments a reasonable and customary rental for the unexempt property retained by him and at or prior to the end of such period to pay into court for the benefit of his creditors the appraised or reappraised value of the property retained by him. That he may not be able within such period to pay his debts in full is immaterial.

The evidence here fails to convince me that there is no reasonable hope that the farmer will be unable to refinance himself within the meaning of that term as hereinabove stated. If he can, he will have complied with the Act on his part. If the secured creditor then chooses to demand a public sale, the court must order it. Nevertheless, even though, as a result of such sale, the farmer fails to save his farm he will have done all that the Act contemplates he should do to rehabilitate himself. The secured creditor has no right to insist that he do more in order to be entitled to the full period of the statutory stay.

The petition to review must be and is hereby denied and the order of the Conciliation Commissioner is hereby confirmed.