## SULLIVAN v. TOFFLEMOYER.
### No. 1853.

Circuit Court of Appeals, Tenth Circuit.
June 19, 1939.

Alious Rockett and John M. Sullivan, both of Denver, Colo., for appellant.

No appearance or brief for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is a proceeding under section 75 of the National Bankruptcy Act, as amended, 11 U.S.C.A. § 203. On November 3, 1938, John William Tofflemoyer, hereinafter called the debtor, filed his petition in the court below in which it was recited that he was engaged in farming operations; that he was insolvent; and that he desired to effect a composition or extension of time in which to pay his debts under such section. He scheduled assets valued at $6,900, and debts aggregating $4,378. His assets consisted of 800 acres of land in Colorado valued at $6,000 and personal property valued at $900. P. J. Sullivan, as assignee and holder of a note in the sum of $3,643 secured by a deed of trust on the land, was listed as a secured creditor; and it was recited in the schedules that proceedings for the foreclosure of such deed of trust were pending. A bank, holding a note secured by a chattel mortgage on livestock and machinery; a named company, holding a note secured by a chattel mortgage on horses; and the Farm Credit Administration, holding notes given in 1932 for feed and seed loans, were listed as creditors. Taxes in the sum of $50 were also scheduled. The court immediately approved the petition and referred it to the conciliation commissioner. The first meeting of creditors was held on December 1st, at which the debtor submitted a proposal to his creditors. He proposed that the taxes be paid within six months; that the debt due the Farm Credit Administration be extended until he should be able to pay it with proceeds from crops raised by him; and that the debts due the bank and the company respectively be extended for such time as his needs might require. In respect to the debt due Sullivan he proposed

that the foreclosure proceeding be discontinued, and that the creditor accept $2,500 on December 1, 1941, in full payment and discharge of the obligation. Sullivan rejected the proposal; the bank accepted; and the other creditors failed to take any action. The debtor was examined in respect to his affairs and his testimony is in the record. The conciliation commissioner made his report in which he recommended that the petition be dismissed, and that the debtor be given thirty days within which to amend his petition asking to be adjudged a bankrupt under subsection (s). The court approved the report and dismissed the petition with such leave. The amended petition was filed; the property was appraised; certain personal property was set apart to the debtor as exempt; and an order was entered staying for a period of three years all judicial proceedings against the debtor, permitting him to retain possession of all of his property during that time under the supervision and control of the court, conditioned that he pay a reasonable rental. Such rental was fixed at one-third of all crops, or its equivalent in money, raised on such premises each year, together with $50 in cash as rental on the pasture. It was further provided that the first payment of rental be made within one year from the date of the order, and that all rentals be used for payment of taxes and upkeep of the property as thereafter ordered by the conciliation commissioner, and the remainder, if any, be distributed among the secured and unsecured creditors and applied on their claims as their interests might appear.

Sullivan filed a motion in which he prayed that the restraining, moratorium, and rental order be vacated, and that the proceeding be dismissed. One ground of the motion was that the debtor was beyond all reasonable hope of rehabilitation. Other grounds were advanced but it is unnecessary to detail them. The motion was referred to the conciliation commissioner. He reported that there was some merit in the contention of impossibility of rehabilitation, but he recommended that the petition be denied and that the court defer action in respect to vacating the moratorium order or dismissing the proceeding until December 31, 1939, during which time the debtor be permitted to seek rehabilitation. The court entered an order approving the report, dismissing the petition, and continuing the stay order until December 31, 1939. From that order Sullivan appealed.

Subsection (s) authorizes the court to stay all judicial proceedings against the debtor or his property for a period of three years. And it further empowers the court to authorize the debtor to retain possession of all or any part of his property during such period, subject to the control of the court, provided a reasonable rental is paid. But the statute presupposes a reasonable probability that the debtor will be able to liquidate his debts. That postulate is implicit in the act. A debtor without present or potential equity in his property, with no reasonable chance of paying or refunding the liens on his property, and who is beyond all reasonable hope of rehabilitation, is not entitled to invoke the statute and thus merely defer inevitable liquidation. A proceeding should be halted when it appears that nothing beyond postponement of inevitable liquidation can be expected. Wright v. Vinton Branch, 300 U.S. 440, footnote at page 462, 57 S.Ct. 556, at page 562, 81 L.Ed. 736, 112 A.L.R. 1455; In re Borgelt, 7 Cir., 79 F.2d 929; Massey v. Farmers & Merchants Nat. Bank & Trust Co., 4 Cir., 94 F.2d 526; Cowherd v. Phoenix Joint Stock Land Bank, 8 Cir., 99 F.2d 225, certiorari denied 59 S.Ct. 583, 83 L.Ed. —; Bender v. Federal Farm Mortgage Corporation, 8 Cir., 99 F.2d 252; Donald v. San Antonio Joint Stock Land Bank, 5 Cir., 100 F.2d 312; Wilson v. Alliance Life Ins. Co., 5 Cir., 102 F.2d 365.

The debtor is past sixty-one years of age. He executed the original deed of trust covering the land about fourteen years prior to the institution of this proceeding. The initial loan was $1000, but it was subsequently increased to $2000. Other than an installment of interest in the sum of $80, paid in 1931, no part of the principal or interest has been paid. The property is sand-hill land, is subject to blow when tilled, and is best adapted to grazing purposes. The debtor has not resided on it and farmed it since 1925. His son resided on it in 1934. The debtor and the son farmed a part of it together that year. The debtor rented it for grazing purposes during the several years immediately preceding the beginning of this proceeding. The annual rental was approximately $160, being 20 cents per acre. Some improvements and repairs were made

in the water supply and fences during the last five years, and a new well was provided; but no new material was furnished or used. The debtor rented other land and farmed it. He testified that he "had to farm for a business and work out for a living." His plan for the liquidation of his debts was to engage in the farming and livestock business. He purposed to move onto the land, produce crops, and raise and feed cattle and hogs. But he did not own any such livestock, and he had no arrangements through which to acquire it. He was content to say in reply to questions respecting the obtaining of money with which to buy stock that he had done quite a bit of talking about it but that nothing definite had been accomplished, and he declined to give the names of the persons with whom he had discussed the matter. His attitude was not only evasive, but plainly indicated that nothing tangible was within reach. About two months prior to the filing of the petition, he conveyed 160 acres of land, a piece of town property, and the improvements on some school land to his wife. His only explanation of the transaction was, "She said that I would just fool around and lose everything and I just gave it to her then and told her that if I lost everything I had I would go down the railroad track." The land listed in the schedule and covered by the deed of trust was appraised at $3800; the lien against it was $3643; Sullivan stated in his affidavit attached to the motion for dismissal that during the past 40 years he had been actively engaged in the banking, farming, and livestock business in Yuma County—the location of the property in question; that during the past ten years he had purchased 6000 acres of land in that area at prices ranging from $2.50 to $3.50 per acre; that to his knowledge no land in that locality of the character of that belonging to the debtor had sold for more than $3.50 per acre; that for many years $3 per acre had been considered a standard price for land; and that there was nothing inherent in the land of the debtor to give it special value. The only other evidence relating to value was the testimony of the debtor. He testified that according to his understanding two tracts of land in the community sold about two years preceding the time of the hearing at $10 per acre, but on inquiry as to the source of his information he stated that he gathered it from talk. It clearly appears that the debtor is without any present or potential equity in his property. He has no reasonable chance of paying or refunding the liens upon it within the three-year stay period. The facts and circumstances show convincingly that he is beyond all reasonable hope of rehabilitation. For these reasons the court should have sustained the motion.

The challenged order is reversed and the cause remanded with direction to dismiss the proceeding.