In the Matter of Pierce James **GUARD, Jr. Debtor.**

**FIRST NATIONAL BANK OF PINELLAS, Plaintiff,**

v.

**Pierce James GUARD, Jr., Defendant.**

**Bankruptcy No. 80–1509.**
**Adv. No. 82–0084.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 13, 1982.

Thomas B. Mimms, Tampa, Fla., for First Nat. Bank of Pinelles.

Pierce J. Guard, Lakeland, Fla., debtor, pro se.

Jary C. Nixon, Tampa, Fla., trustee, pro se.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OPINION AND FINAL JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case originally commenced by a petition for relief under Chapter 13 of the Bankruptcy Code, filed by Pierce James Guard, Jr. (the Debtor). Having been unable to obtain confirmation of the Chapter 13 plan, the Debtor filed a notice of conversion pursuant to § 1307 of the Code. In due course, Jary C. Nixon was appointed Interim Trustee and later as permanent trustee for the estate of the debtor. He is also named as a party Defendant in the above-captioned adversary proceeding. The proceeding was commenced by a complaint filed by the First National Bank of Pinellas (the Bank). In Count I of the complaint the Bank seeks a modification of the automatic stay pursuant to § 362(d)(1) of the Code in order to enforce its lien claim against certain personal property of the Debtor. In Count II of the complaint the Bank seeks a judgment awarding possession of the same properties to the Bank.

In due course, the Trustee filed a disclaimer, i.e. his intention to abandon any interest in the properties involved in the controversy. The Debtor filed his response to the complaint, in the form of an answer which contains some general admissions and some denials.

At the conclusion of the preliminary hearing, this Court entered an order; extended the automatic stay but directed the Debtor to pay to the Bank $200 per month as adequate protection. The order also granted leave to the Debtor to assert whatever claim he might have concerning the validity of the Bank's security interest. The Debtor filed a counter-claim in which he sought to invalidate the lien claimed by the Bank pursuant to § 522(f) of the Code. In response, the Bank filed a pleading entitled "Answer to Counter-claim" obviously meant to be a reply to counter-claim, and challenged the Debtor's right to invalidate the Bank's security interest on several grounds. First, it is contended by the Bank that to apply § 522(f) retroactively to the Bank's lien, a lien created prior to the enactment of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, to-wit: November 6, 1978, would be an unconstitutional "taking of property" in violation of the Fifth Amendment of the United States Constitution. In addition, it is the contention of the Bank that none of the items were claimed as exempt, therefore, the Debtor cannot resort to the lien voiding powers granted by § 522(f). It appears, however, that while the properties involved were not claimed as exempt by the Debtor initially, they now have been claimed as exempt by an amendment of Schedule B–4 filed by the Debtor.

The matter is presented for this Court's determination by a Motion for Summary Judgment filed by the Bank. Since it is conceded by both parties that there are no genuine issues of material fact, the matter can be resolved as a matter of law.

Having considered the respective contentions of the parties and the authorities cited, this Court is satisfied that the retroactive application of § 522(f) to a security interest created prior to the enactment of the Bankruptcy Code, to-wit: November 6, 1978, would be an invalid taking of property in violation of the 5th Amendment of the United States Constitution.

The retroactive application of the voiding powers granted by § 522(f) of the Bankruptcy Reform Act, not surprisingly, has received extensive treatment by the Courts. For instance, the 10th Circuit Court of Appeals in the case of *Rodrock v. Security Industrial Bank,* 642 F.2d 1193 (10th Cir. 1981) considering the same issue stated that:

> In the instant cases, the creditors acquired rights in specific property prior to the enactment of the Reform Act, and under *Radford,* these vested rights cannot be taken from the creditor for the benefit of the debtor. It should be noted that, in the instant cases, there would be a complete taking of the secured creditors' property interests.

> Counsel suggests that, with the passage of time, *Radford* has lost its steam and that later decisions of the Supreme Court cast doubt on the continuing vitality of that decision. We disagree. Such cases as *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, (1937) ... may well refine the rule of *Radford,* but they do not destroy the fundamental teaching of *Radford,* that Congress may not under the bankruptcy power completely take for the benefit of a debtor rights in specific property previously acquired by a creditor.

The Court in *Rodrock* relied on an early Supreme Court decision, *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), in which case the Supreme Court invalidated a provision of the Frazier-Lemke Act which granted a moratorium to farmers by prohibiting foreclosure on farm properties for five years and granted a right to farmers to redeem the mortgage by paying the fair market value of the collateral at the end of the moratorium.

In the *Matter of Gifford,* 669 F.2d 468 (7th Cir.1982), the U.S. Court of Appeals for the Seventh Circuit agreed that the retroactive application of § 522(f) would result in an unconstitutional taking of property without just compensation. Not only did the Seventh Circuit agree with the decision in *Rodrock,* but opined that subsequent Supreme Court decisions may very well refine but not destroy the fundamental teaching of *Radford* that Congress may not under the Constitutional grant of power, legislate on the subject of bankruptcy, Art. I, § 8, and take, for the benefit of a debtor, rights in specific property previously acquired by a creditor. *Matter of Gifford, supra.* Accordingly, the Court held that a non-possessory, non-purchase money security interest was worthy of constitutional protection and cannot be invalidated by a retroactive application of § 522(f) of the Code.

The Court is not unmindful of the decision of the Ninth Circuit in the case of *Webber v. Credithrift of America, Inc.,* 674 F.2d 796 (9th Cir.1982) upholding the constitutional validity of the retroactive application of § 522(f) of the Code. In *Webber,* the Court of Appeals for the Ninth Circuit concluded that the Congress is not prohibited to pass laws which may impair contractual obligations, created between the enactment of the Bankruptcy Reform Act on November 6, 1978 and its effective date, October 1, 1978. The Court reasoned that upon enactment of the new law, knowledge and understanding of the same should be imputed to creditors and their attorneys and liens created within the "gap" period are subject to avoidance under § 522(f) of the Bankruptcy Code.

While this Court concurs with the *Webber* decision, it is clearly inapplicable to the case at bar. As noted above, *Webber* involved a lien on personal property which was perfected in July of 1979, i.e., between the enactment and the effective date of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598. The *Webber* court noted that although *Radford, supra* might still be controlling where pre-enactment property rights are at issue, it is inapplicable to the treatment of "gap liens".

In the present situation, the lien at issue arose prior to the enactment of the Bankruptcy Reform Act and is thus outside the scope of the *Webber* holding.

This Court is aware of the recent case of *Commonwealth National Bank v. Ashe*, 669 F.2d 105 (3d Cir.1982), in which the Court of Appeals for the Third Circuit held that a retroactive application of § 522(f) does not divert a property from the creditor for "public use" but merely transfers the property to the Debtor pursuant to the authority granted to Congress by the Constitution, Art. I, § 8, to enact legislation on the subject of bankruptcy. Even assuming, however, while not admitting, that the holding in *Ashe* represents an accurate statement of the law and the debtor may utilize the voiding powers granted by § 522(f)(2)(A), (B) in order to invalidate a security interest created and perfected prior to the enactment of the Bankruptcy Reform Act, Pub.L. No. 95–598, it is evident that the items sought to be freed from the liens, with the exception of professional books, are not within the reach of § 522(f)(2)(A), (B). First, it would be a novel and radical proposition to accept the debtor's contention that the term "trade" includes the practice of law. Second, it is evident that a typewriter, a desk or a chair cannot be considered "tools", a term commonly understood to be instruments held by the hand to perform or to facilitate to perform a mechanical operation; or an instrument used in manual operation. See, *American College Dictionary*, 1276 (Randon House ed. 1970).

Having concluded that the Debtor cannot invalidate the security interest of the Bank for the reasons stated, and having established without dispute that the Debtor is not living up to the terms of the order which granted adequate protection, this Court is satisfied that the Bank is entitled to the relief sought.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the automatic stay imposed by § 362 of the Code be, and the same hereby is, modified and the Bank is authorized to proceed to obtain possession of the chattels in question pursuant to the provisions of the applicable law, Fla.Stat. 679.503. It is further

ORDERED, ADJUDGED AND DE-CREED that the counter-claim filed by the Debtor be, and the same hereby is, dismissed with prejudice.